STATE OF NORTH CAROLINA v. JOE WESLEY HUNT

No. 473A95

(Filed 11 April 1997)

**1. Criminal Law § 120 (NCI4th Rev.)— capital murder— State's failure to preserve evidence—motion to dismiss denied—no abuse of discretion**

The trial court did not abuse its discretion in a capital first-degree murder prosecution (life sentence) by not granting defendant's motions to dismiss or for a new trial where defendant contended that the State's violation of discovery orders in failing to preserve evidence required the trial court to grant his motions. The exculpatory or impeachment value of the missing evidence is speculative and nothing in the record suggests that any law enforcement officer willfully destroyed the missing evidence.

**Am Jur 2d, Depositions and Discovery §§ 426-428.**

**Right of accused in state courts to inspection or disclosure of evidence in possession of prosecution. 7 ALR3d 8.**

**Right of defendant in criminal case to inspection of statement of prosecution's witness for purposes of cross-examination or impeachment. 7 ALR 3d 181.**

**Failure of police to preserve potentially exculpatory evidence as violating criminal defendant's rights under state constitution. 40 ALR5th 113.**

2. **Constitutional Law § 252 (NCI4th)— capital murder—failure of State to preserve evidence—no violation of due process and fair trial**

The State's failure to preserve evidence seized at the home of a capital first-degree murder defendant (life sentence) did not violate his rights to due process and a fair trial under the Fourteenth Amendment to the United States Constitution and Article I, Sections 19 and 23 of the North Carolina Constitution where the trial court's finding that there was no showing of bad faith or willful intent on the part of any law enforcement officer is supported by the record and defendant did not demonstrate that the missing evidence possessed an exculpatory value that was apparent before it was lost.

**Am Jur 2d, Criminal Law § 785.**

**Failure of police to preserve potentially exculpatory evidence as violating criminal defendant's rights under state constitution. 40 ALR5th 113.**

**Prosecution's failure to preserve potentially exculpatory evidence as violating criminal defendant's due process rights under Federal Constitution—Supreme Court cases. 102 L. Ed. 2d 1041.**

3. **Criminal Law § 834 (NCI4th Rev.)— capital murder—requested instruction on credibility of police officers—denied**

There was no error in a capital first-degree murder prosecution (life sentence) where the trial court refused to give defendant's requested instruction on the credibility of law enforcement officers as witnesses and instead gave the pattern jury instruction on interested witnesses. No evidence suggests that any officer had any interest in the outcome of this case which would cast doubt on his truthfulness or credibility as a witness.

**Am Jur 2d, Trial §§ 1406, 1410, 1412.**

**4. Homicide § 669 (NCI4th)— capital murder—request for instruction on second-degree based on intoxication— denied**

The trial court did not err in a capital first-degree murder prosecution by denying defendant's request for an instruction on second-degree murder based on evidence of voluntary intoxication. Even viewed in the light most favorable to defendant, the evidence tended to show only that defendant was intoxicated and was insufficient to show that defendant was utterly incapable of forming a deliberate and premeditated purpose to kill. Witnesses who were with defendant on the day of the killing testified that he did not appear intoxicated, there was no lay or expert testimony with respect to defendant's ability to form an intent to kill or with respect to his mental capabilities at the time of the murder, defendant acted rationally after the killing in disposing of the body, the victim's clothes, the murder weapon, his own clothes, and in cleaning the automobile, and defendant was able to recall how he stabbed the victim and disposed of her body.

**Am Jur 2d, Homicide § 517.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Hooks, J., at the 1 May 1995 Criminal Session of Superior Court, Robeson County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 16 October 1996.

*Michael F. Easley, Attorney General, by Francis W. Crawley, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Charlesena Elliott Walker, Assistant Appellate Defender, for defendant-appellant.*

PARKER, Justice.

Defendant Joe Wesley Hunt was tried capitally on an indictment charging him with the first-degree murder of Linda Scott ("victim"). The jury returned a verdict finding defendant guilty as charged. Following a capital sentencing proceeding, the jury recommended a sentence of life imprisonment; and the trial court entered judgment accordingly. For the reasons discussed herein, we conclude that defendant's trial was free from prejudicial error and uphold his conviction and sentence.

**STATE v. HUNT**

[345 N.C. 720 (1997)]

On 18 February 1992 defendant and his nephew, Joseph Galloway, lived in defendant's mobile home. Defendant, Galloway, the victim, and several others gathered at defendant's home on that evening to drink alcohol and use illegal drugs. At some time after 11:00 p.m., defendant and Galloway left to take the victim home.

At defendant's direction Galloway drove to a remote location and parked the car in a field. Galloway and the victim engaged in consensual sexual intercourse while defendant remained inside the car. After Galloway got back in the car, defendant left the car and walked the victim to the edge of the woods. Galloway testified that defendant and the victim talked and wrestled on the ground for ten to fifteen minutes and then returned to the car. At the car defendant stabbed the victim a number of times in the chest with a white-handled butcher knife. The victim fell to the ground, and defendant knelt down and cut her throat. Defendant told the victim "he was going to let her get her heart right with the Lord" and cut her throat a second time. The stab wounds to the victim's chest resulted in her death.

Defendant and Galloway placed the victim's body in the trunk of the car, drove to a nearby river, and threw the victim's body into the water. They also disposed of the victim's clothes and the white-handled knife by tossing these items into the river. After returning to his mobile home, defendant cleaned himself and put his clothes in a plastic bag. Defendant and Galloway subsequently drove to a different location and threw this bag into the river. Defendant told Galloway that he had been in prison with the victim's husband and that he had promised the victim's husband that he would kill her.

Defendant was arrested on 19 February 1992 and confessed to the murder on that day. In his confession defendant stated that he discovered money missing and that the victim admitted taking it. Defendant instructed the victim to get in the car and told her that he was going to kill her. Galloway told defendant that he knew a good place to take the victim and drove defendant and the victim to a field. After Galloway and the victim had sex, the victim informed defendant she would do anything if he would agree not to kill her. Defendant asked her about the money, walked around the car, and cut her throat. At Galloway's suggestion they disposed of the victim's body in the river.

Additional facts will be presented as necessary to address specific issues.

**[1]** By his first assignment of error, defendant contends that his statutory and constitutional rights were violated by the State's failure to preserve evidence seized at his mobile home on the day of his arrest. Defendant argues that this violation of the trial court's discovery orders required the court to grant his motions to dismiss or his motion for a new trial. We conclude that the State's failure to preserve various articles of evidence did not require the trial court to dismiss the charges against defendant or to grant him a new trial.

Pursuant to a consent search of defendant's mobile home, members of the Robeson County Sheriff's Department seized a number of items of evidence. The evidence included a bag of household garbage, a black-handled knife, a bottle of Canadian Mist, a Lumberton ABC store receipt, and the clothing which Galloway wore on the night of the killing. In November of 1994 the State discovered that these items and a number of other items seized at defendant's home were missing. The listed articles of evidence were never located and were not provided to defendant. In denying defendant's motion to dismiss at the close of the State's evidence, the trial court found (i) that a number of articles of evidence were missing and had not been made available to defendant, (ii) that there was no logical explanation as to where "these articles went or how they were disposed of," and (iii) that there was no showing of bad faith or willful intent on the part of any law enforcement officer or any State's witness with respect to the missing evidence. The court concluded that the State's failure to provide defendant with discovery did not require it to dismiss the murder charge against defendant or to grant defendant a new trial.

> Whether a party has complied with discovery and what sanctions, if any, should be imposed are questions addressed to the sound discretion of the trial court. *State v. Weeks*, 322 N.C. 152, 171, 367 S.E.2d 895, 906 (1988). "[The] discretionary rulings of the trial court will not be disturbed on the issue of failure to make discovery absent a showing of bad faith by the state in its noncompliance with the discovery requirements." *State v. McClintick*, 315 N.C. 649, 662, 340 S.E.2d 41, 49 (1986).

*State v. Tucker*, 329 N.C. 709, 716-17, 407 S.E.2d 805, 810 (1991).

Galloway's testimony and defendant's pretrial statement both tended to show that defendant stabbed the victim to death, that Galloway was present when defendant committed this crime, that Galloway helped defendant put the victim's body in the trunk of the car and toss the body into the river, and that defendant and Galloway

returned to defendant's mobile home after this was accomplished. In light of this evidence, the exculpatory or impeachment value of the missing evidence is speculative. The bag of garbage, the ABC receipt, and the bottle of Canadian Mist would have added little to the testimony which suggested that defendant was intoxicated at the time of the murder. The fact that Galloway helped defendant dispose of the body after the murder makes it unlikely that an examination of Galloway's clothing would have yielded evidence impeaching him or implicating him as the murderer. Similarly, just how the black-handled knife found in defendant's home would have assisted the defense is unclear. The evidence tended to show that the murder weapon had been thrown into the river. A search of the river in the area where the victim's body was found yielded a white-handled knife fitting Galloway's description of the murder weapon.

Nothing in the record suggests that any law enforcement officer willfully destroyed the missing evidence. The trial court found that there was no showing of bad faith or willful intent on the part of any law enforcement officer or any State's witness, and this finding is supported by the record. Under these circumstances we conclude that the trial court did not abuse its discretion by declining to dismiss the charge against defendant or to grant defendant a new trial.

[2] Defendant also argues that the loss or destruction of the articles of evidence seized at defendant's home resulted in a violation of his rights to due process and a fair trial under the Fourteenth Amendment to the United States Constitution and Article I, Sections 19 and 23 of the North Carolina Constitution. "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58, 102 L. Ed. 2d 281, 289 (1988), *quoted in State v. Mlo*, 335 N.C. 353, 373, 440 S.E.2d 98, 108, *cert. denied*, 512 U.S. 1224, 129 L. Ed. 2d 841 (1994). The trial court's finding that there was no showing of bad faith or willful intent on the part of any law enforcement officer is supported by the record. We also note that defendant has not demonstrated that the missing evidence possessed an exculpatory value that was apparent before it was lost. *See California v. Trombetta*, 467 U.S. 479, 489, 81 L. Ed. 2d 413, 422 (1984). For these reasons we conclude that the State's failure to preserve the articles of evidence seized at defendant's home did not violate his rights to due process and a fair trial. This assignment of error is overruled.

[3] By his next assignment of error, defendant contends that the trial court erred by refusing to give the following instruction on the credibility of law enforcement officers as witnesses:

You have heard the testimony of law enforcement officials. The fact a witness may be employed by the federal or state or county government as a law enforcement official does not mean his testimony is necessarily deserving of more or less consideration or greater or lesser weight than an ordinary witness.

At the same time, it is quite legitimate for defense counsel to try to attack the credibility of a law enforcement witness on the grounds his testimony may be colored by a personal or professional interest in the outcome of the case.

It is your decision, after reviewing all the evidence, whether to accept the testimony of the law enforcement witness and to give the testimony whatever weight, if any, you find it deserve[s].

The trial court denied defendant's request for this instruction and instead instructed the jury pursuant to the pattern jury instruction on interested witnesses.

A party to a criminal case is not entitled to an instruction on witness credibility which focuses on law enforcement officers as a class. *State v. Williams*, 333 N.C. 719, 732-33, 430 S.E.2d 888, 895 (1993). The defendant in *Williams* asked the trial court to give an instruction which was virtually identical to the instruction in question and assigned error to the trial court's refusal to do so. We concluded

that the trial court properly instructed the jury about witness credibility in general, focusing neither on law enforcement officers nor on any other class of witnesses. To have singled out any one class of witnesses might well have prompted the jury to be more critical of its credibility than that of other witnesses.

*Id.* at 732, 430 S.E.2d at 895.

No evidence in the record suggests that any law enforcement officer had any interest in the outcome of this case which would cast doubt on his truthfulness or credibility as a witness. *See id.* at 732-33, 430 S.E.2d at 895. We hold that the trial court properly refused to give the instruction requested by defendant. This assignment of error is without merit.

**[4]** In his final assignment of error, defendant contends that the trial court erred by denying his request to instruct the jury on second-degree murder. The test for determining whether an instruction on second-degree murder is required is as follows:

> The determinative factor is what the State's evidence tends to prove. If the evidence is sufficient to fully satisfy the State's burden of proving each and every element of the offense of murder in the first degree, including premeditation and deliberation, and there is *no* evidence to negate these elements other than defendant's denial that he committed the offense, the trial judge should properly exclude from jury consideration the possibility of a conviction of second degree murder.

*State v. Strickland*, 307 N.C. 274, 293, 298 S.E.2d 645, 658 (1983), *overruled in part on other grounds by State v. Johnson*, 317 N.C. 193, 344 S.E.2d 775 (1986). Defendant argues that evidence of his voluntary intoxication was sufficient to negate the evidence that he formed a specific intent to kill. We conclude that the evidence of defendant's intoxication was not sufficient to negate any of the elements of premeditated and deliberate first-degree murder.

> A defendant who wishes to raise an issue for the jury as to whether he was so intoxicated by the voluntary consumption of alcohol that he did not form a deliberate and premeditated intent to kill has the burden of producing evidence, or relying on evidence produced by the state, of his intoxication. Evidence of mere intoxication, however, is not enough to meet defendant's burden of production. He must produce substantial evidence which would support a conclusion by the judge that he was so intoxicated that he could not form a deliberate and premeditated intent to kill.

*State v. Mash*, 323 N.C. 339, 346, 372 S.E.2d 532, 536 (1988), *quoted in State v. Lambert*, 341 N.C. 36, 44-45, 460 S.E.2d 123, 128 (1995).

Evidence was offered at trial tending to show that defendant drank continuously on the day of the killing, that he shared three half-cases of beer and some liquor with Galloway and four other persons, that he shared a half-case of beer and a fifth of Jim Beam with Galloway and Ralph Sweat, that he smoked marijuana, and that he was "pretty high" or "good and high" late in the evening on the night of the murder. Even viewed in the light most favorable to defendant, this evidence tended to show only that defendant was intoxicated;

and it was insufficient to show that defendant was " 'utterly incapable of forming a deliberate and premeditated purpose to kill.' " *State v. Strickland*, 321 N.C. 31, 41, 361 S.E.2d 882, 888 (1987) (quoting *State v. Medley*, 295 N.C. 75, 79, 243 S.E.2d 374, 377 (1978)); *cf. State v. Morston*, 336 N.C. 381, 404-05, 445 S.E.2d 1, 14 (1994) (no error in declining to submit second-degree murder where the evidence suggested that the defendant consumed a "considerable amount" of gin less than one hour before the murder, that the defendant had mixed crack cocaine and a pain reliever with his gin, that the defendant's eyes were "big and red," and that the defendant "looked like he was high").

No evidence in this case tended to show that defendant was behaving erratically prior to the killing. To the contrary, witnesses who were with defendant on the day of the killing testified that he did not appear intoxicated. There was no lay or expert testimony with respect to defendant's ability to form an intent to kill or with respect to his mental capabilities at the time of the murder. After killing the victim defendant acted rationally in disposing of the victim's body, the victim's clothes, the murder weapon, and his own clothes and in cleaning the automobile. In a statement made after his arrest, defendant was able to recall how he had stabbed the victim and disposed of her body. We conclude from this record that the evidence was insufficient to show that defendant was so intoxicated that he was incapable of forming the specific intent to kill required for first-degree murder. Accordingly, the evidence of defendant's voluntary intoxication did not require the trial court to instruct the jury on the offense of murder in the second degree. This assignment of error is overruled.

We conclude that defendant received a fair trial free from prejudicial error.

NO ERROR.