BERGER, Judge.
 

 *651
 
 A Macon County jury convicted Brodie Lee Hamilton ("Defendant") of multiple charges of trafficking methamphetamine and one charge of conspiracy to traffic methamphetamine. For these convictions, the trial court sentenced Defendant to three consecutive terms of 225 to 282 months in prison, and fined him $750,000.00. Defendant appeals, alleging the trial court erred in (1) denying his motion to dismiss, (2) denying his motion for sanctions, and (3) not providing a special instruction to the jury that had been requested. All three of Defendant's allegations of error are based on a discovery dispute in which the State had failed to disclose a blank audio recording. After review, we disagree with Defendant's contentions and find no error.
 

 Factual and Procedural Background
 

 The Macon County Sheriff's Department received a tip involving drug transportation along a known methamphetamine trafficking route between Atlanta, Georgia and Macon County, North Carolina. The information included specific details about the individuals involved and the vehicle that would be used. Under the direction of Lieutenant Charles Moody ("Lt. Moody"), the department sought to intercept the vehicle by monitoring the back roads of Macon County between the pick-up and drop-off locations.
 

 On June 19, 2015, Jeremy Stanley ("Stanley") and Elizabeth Tice ("Tice") were stopped in Macon County after failing to stop at a stop sign. Stanley told deputies that there was a gun in the vehicle, and a trace of its serial number showed the firearm had been stolen. Both Stanley and Tice were arrested for possession of a stolen firearm. Stanley told deputies he wanted to talk and had additional information about the stolen firearm.
 

 Deputies brought in a K9 unit to conduct a "free air" sniff around the vehicle. The K9 unit alerted on the vehicle, and deputies located more
 
 *652
 
 than two pounds of methamphetamine in a plastic container behind the driver's seat.
 

 Stanley and Tice were then transported to the Macon County Sheriff's Department. Stanley told Lt. Moody that Defendant paid them $17,000.00 to pick up the methamphetamine in Atlanta. Lt. Moody asked Stanley and Tice if they could help prove Defendant was involved by setting up a controlled delivery of artificial methamphetamine. Stanley used Tice's cell phone to call Defendant, told him that they had problems with their vehicle, and arranged for someone to pick up the drugs at the Smokey Mountain Welcome Center. Lt. Moody testified that he "could hear that there was a person on the other end of the line, but [he] couldn't hear what was being said" by that person.
 

 Defendant was not present at the site of the drug exchange, but instead, the exchange
 
 *551
 
 was carried out by two of Defendant's associates. Both associates were arrested on site.
 

 On December 14, 2015, the Macon County Grand Jury indicted Defendant for trafficking in methamphetamine by possession, trafficking in methamphetamine by transportation, and conspiracy to traffic methamphetamine. During Defendant's January 2017 trial, defense counsel asked Lt. Moody on cross-examination if he had attempted to record the telephone conversations between Stanley and Defendant. Lt. Moody responded:
 

 I tried to record the telephone call. I don't normally do that. I had a brand-new tape recorder that had just been purchased. I just used that and a microphone and a suction cup to try to record that call ... and made that attempt. It wasn't until sometime later that I realized that there's no-there's no real conversation that was captured during that recording.
 

 Defense counsel then informed the trial court that he was unaware of Lt. Moody's attempt to preserve the conversation by audio recording as no such information had been provided in discovery. Defense counsel was permitted to question Lt. Moody outside the presence of the jury:
 

 [Defense Counsel:] So what was actually recorded in that?
 

 [Lt. Moody:] Nothing.
 

 [Defense Counsel:] Absolutely nothing?
 

 *653
 
 [Lt. Moody:] Nothing. An occasional noise, but you couldn't even make out the words. I didn't do a very good job of the installation. I was not familiar with the equipment or with that particular phone.
 

 ...
 

 [Defense Counsel:] So you recorded how many phone calls with this device?
 

 [Lt. Moody:] One.
 

 [Defense Counsel:] Which one was that?
 

 [Lt. Moody:] It would have been the first call. And quite honestly, I don't recall if I attempted to record the second one or not. I didn't make any attempt to listen to the recording until a couple of days after that, and there was just nothing there.
 

 [Defense Counsel:] Do we still have the audiotape?
 

 [Lt. Moody:] I don't think so.
 

 THE COURT: What happened to it? I mean, is it a physical tape? Is it digital information?
 

 [Lt. Moody:] It would be a digital tape. ... A digital-a digital device.
 

 THE COURT: Do you still have that device?
 

 [Lt. Moody:] I don't know, Your Honor. I listened to it-or attempted to listen to the recording several times. There was no recording there. I had other-at least one other officer confirm that there wasn't anything there as well. I don't know if I didn't turn it on, if-if I used-if I placed the microphone on it inappropriately. There was no recording there.... There was no-there was no audible information on the recording.
 

 On January 25, 2017, Defendant filed a motion for sanctions seeking dismissal of the charges for what he contended was a willful violation
 
 *654
 
 of North Carolina's discovery statutes and his constitutional rights. The trial court denied his motion for sanctions.
 

 On January 27, 2017, Defendant was convicted on all counts, sentenced to three consecutive terms of 225 to 282 months in prison, and fined $750,000.00. Defendant appeals, arguing the State's failure to provide the blank audio recording in discovery warranted dismissal of the charges against him for violation of his constitutional rights and North Carolina's discovery statutes. Defendant also argues the trial court erred in denying his motion for sanctions and not providing the jury a special instruction on spoliation of evidence. We disagree.
 

 I.
 
 Motion to Dismiss
 

 Defendant contends the trial court was required to dismiss all charges for the State's failure to preserve and disclose the blank audio recording of the conversation between Defendant and Stanley. Specifically, Defendant
 
 *552
 
 asserts that the State violated his constitutional rights as set forth in
 
 Brady v. Maryland
 
 ,
 
 373 U.S. 83
 
 ,
 
 83 S.Ct. 1194
 
 ,
 
 10 L.Ed.2d 215
 
 (1963), by failing to turn over information that was favorable and material to guilt or punishment. We disagree.
 

 Standard of Review
 

 The standard of review for alleged violations of constitutional rights is
 
 de novo
 
 .
 
 State v. Graham
 
 ,
 
 200 N.C. App. 204
 
 , 214,
 
 683 S.E.2d 437
 
 , 444 (2009).
 

 Analysis
 

 A trial court must dismiss criminal charges where a "defendant's constitutional rights have been flagrantly violated and there is such irreparable prejudice to the defendant's preparation of his case that there is no remedy but to dismiss the prosecution." N.C. Gen. Stat. § 15A-954(a)(4) (2017). Defendant has "the burden of showing the flagrant constitutional violation and of showing irreparable prejudice to the preparation of his case. This statutory provision contemplates drastic relief, such that a motion to dismiss under its terms should be granted sparingly."
 
 State v. Williams
 
 ,
 
 362 N.C. 628
 
 , 634,
 
 669 S.E.2d 290
 
 , 295 (2008) (citation and quotation marks omitted).
 

 Pursuant to
 
 Brady v. Maryland
 
 , "[e]vidence favorable to an accused can be either impeachment evidence or exculpatory evidence."
 
 Williams
 
 ,
 
 362 N.C. at 636
 
 ,
 
 669 S.E.2d at 296
 
 . Evidence is material if, had the evidence been disclosed, there is a reasonable probability of a different result.
 
 Kyles v. Whitley
 
 ,
 
 514 U.S. 419
 
 ,
 
 115 S.Ct. 1555
 
 ,
 
 131 L.Ed.2d 490
 
 (1995). Defendant "has the burden
 
 *655
 
 of showing that the undisclosed evidence was material and affected the outcome of the trial."
 
 State v. Tirado
 
 ,
 
 358 N.C. 551
 
 , 589-90,
 
 599 S.E.2d 515
 
 , 541 (2004) (citation omitted). However, Defendant is not required to demonstrate that disclosure of the evidence would have resulted in acquittal, but instead, the failure to provide the evidence undermined confidence in the outcome of the trial.
 
 Kyles
 
 ,
 
 514 U.S. at 434
 
 ,
 
 115 S.Ct. 1555
 
 .
 

 Moreover, when the unpreserved evidence is "potentially useful," a defendant must demonstrate "bad faith on the part of the police" in order to show a "denial of due process of law."
 
 Arizona v. Youngblood
 
 ,
 
 488 U.S. 51
 
 , 58,
 
 109 S.Ct. 333
 
 ,
 
 102 L.Ed.2d 281
 
 (1988) ;
 
 see also
 

 State v. Mlo
 
 ,
 
 335 N.C. 353
 
 , 373,
 
 440 S.E.2d 98
 
 , 108 (1994) ;
 
 State v. Dorman
 
 ,
 
 225 N.C. App. 599
 
 , 620,
 
 737 S.E.2d 452
 
 , 466 (2013). "[R]equiring a defendant to show bad faith on the part of police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it."
 
 Youngblood
 
 ,
 
 488 U.S. at 58
 
 ,
 
 109 S.Ct. 333
 
 . However, "[e]vidence of bad faith standing alone, even if supported by competent evidence, is not sufficient to support a dismissal under N.C. Gen. Stat. § 15A-954(a)(4)."
 
 Dorman
 
 ,
 
 225 N.C. App. at 622
 
 ,
 
 737 S.E.2d at 467
 
 .
 

 Here, Defendant had the opportunity to question Stanley about his phone call with Defendant, cross-examine Lt. Moody about destruction of the blank audio recording, and argue the significance of the blank audio recording to the jury. Defendant did just that at trial. Defendant merely demonstrated that the blank audio recording could have been potentially useful. However, Defendant has failed to show bad faith on the part of Lt. Moody. It is undisputed that the blank audio recording had not been disclosed to Defendant and had been subsequently destroyed by Lt. Moody. Defendant's highly speculative assertions about Lt. Moody, standing alone, are insufficient to demonstrate bad faith.
 

 Moreover, while the evidence
 
 may
 
 have had the potential to be favorable, Defendant has failed to demonstrate that the blank audio recording was material. At trial, it was established that Defendant had orchestrated the procurement of a significant quantity of methamphetamine with a series of runners and underlings. Stanley, Tice, and Christopher Prince each provided similar accounts of the role Defendant had played in financing the operation, obtaining the methamphetamine in Atlanta, and transporting that contraband to North Carolina. In light of the evidence at trial, the Defendant's speculation about the contents and significance of a blank audio recording does not undermine confidence in the outcome of his trial.
 

 *553
 

 *656
 
 Defendant argues that "[s]ilence with occasional noises, would have been relevant and highly probative evidence in this case," because it undermined Stanley's credibility and "indicates that Stanley fabricated [Defendant's] involvement." Defendant submits that, because the evidence went to Stanley's credibility, bad faith need not be shown under
 
 Giglio v. United States
 
 ,
 
 405 U.S. 150
 
 ,
 
 92 S.Ct. 763
 
 ,
 
 31 L.Ed.2d 104
 
 (1972).
 
 Giglio v. United States
 
 , however, concerned the failure by the prosecution to disclose the existence of a promise not to prosecute "the only witness linking petitioner with the crime."
 
 405 U.S. 150
 
 , 151,
 
 92 S.Ct. 763
 
 ,
 
 31 L.Ed.2d 104
 
 (1972). That witness had denied the existence of the promise on cross examination, and the attorney for the government, unaware of the promise, informed the jury that the witness had received no such concession.
 
 Id
 
 . The United States Supreme Court stated that "[w]hen the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule."
 
 Id
 
 . at 154,
 
 92 S.Ct. 763
 
 (citations and quotation marks omitted).
 

 Such is not the case here. Stanley was not the only link to Defendant's involvement in trafficking methamphetamine. Further, to the extent the blank audio recording implicated any witness' credibility, it was Lt. Moody's, not Stanley's credibility. Stanley played no part in the installation of the recording equipment on the phone, or the preservation, destruction, or failure to disclose the existence of the blank audio recording. Even if the blank audio recording had been available to Defendant, the fact that, in substance, it contained no audible information does not implicate Stanley's credibility. The jury heard, and was able to weigh, Stanley's testimony in light of the fact that the recording was not preserved. Defendant's argument is unpersuasive, and we see no error in the trial court's denial of Defendant's motion to dismiss.
 

 II.
 
 Trial Court's Denial of Statutory Sanctions
 

 Defendant next argues the trial court erred in denying his motion for sanctions for failure to preserve and disclose the blank audio recording. We disagree.
 

 Standard of Review
 

 Our Courts have consistently held that a trial court's determination on whether to impose sanctions, pursuant to N.C. Gen. Stat. § 15A-910, for failure to comply with discovery requirements is reviewed for abuse of discretion.
 
 State v. Lane
 
 ,
 
 365 N.C. 7
 
 , 31,
 
 707 S.E.2d 210
 
 , 225 (2011) ;
 
 see also
 

 State v. Herring
 
 ,
 
 322 N.C. 733
 
 , 747-48,
 
 370 S.E.2d 363
 
 , 372 (1988) ("The sanction for failure to make discovery when required is within
 
 *657
 
 the sound discretion of the trial court and will not be disturbed absent a showing of abuse of discretion."). A trial court abuses its discretion when its ruling on discovery related sanctions "was so arbitrary that it could not have been the result of a reasoned decision."
 
 State v. Allen
 
 ,
 
 222 N.C. App. 707
 
 , 733,
 
 731 S.E.2d 510
 
 , 528 (2012) (citation and quotation marks omitted).
 

 Analysis
 

 North Carolina's criminal discovery statutes provide that, for the purposes of investigation and prosecution, "law enforcement and investigatory agencies shall make available to the prosecutor's office a complete copy of the complete files." N.C. Gen. Stat. § 15A-903(c) (2017). A file, pursuant to the statute, includes
 

 defendant's statements, the codefendants' statements, witness statements, investigating officers' notes, results of tests and examinations,
 
 or any other matter or evidence obtained during the investigation of the offenses alleged to have been committed by the defendant
 
 . When any matter or evidence is submitted for testing or examination, in addition to any test or examination results, all other data, calculations, or writings of any kind shall be made available to the defendant, including, but not limited to, preliminary test or screening results and bench notes.
 

 N.C. Gen. Stat. § 15A-903(a)(1)(a) (emphasis added).
 

 In addition to contempt, a trial court may impose the following sanctions for failure to comply with discovery:
 

 *554
 
 (1) Order the party to permit the discovery or inspection, or
 

 (2) Grant a continuance or recess, or
 

 (3) Prohibit the party from introducing evidence not disclosed, or
 

 (3a) Declare a mistrial, or
 

 (3b) Dismiss the charge, with or without prejudice, or
 

 (4) Enter other appropriate orders.
 

 N.C. Gen. Stat. § 15A-910(a) (2017). Before imposing sanctions, however, the trial court "shall consider both the materiality of the subject matter and the totality of the circumstances surrounding an alleged failure to comply." N.C. Gen. Stat. § 15A-910(b).
 

 *658
 
 Pursuant to Section 15A-903(a), Lt. Moody should have not only documented his efforts to preserve the conversation by audio recording between Stanley and Defendant, but should have also provided the blank audio file to the District Attorney's Office to be turned over to Defendant in discovery because the blank audio recording constituted "any other matter or evidence obtained during the investigation." N.C. Gen. Stat. § 15A-903(a)(1)(a). The statute obviates any requirement that law enforcement evaluate the evidence to determine if it should be turned over to the District Attorney's Office, because anything obtained during the investigation, regardless of perceived evidentiary value, is required to be preserved, documented, and disclosed.
 

 We are not unmindful of the fact that there may be practical barriers for officers and detectives in the field pursuing leads, interviewing witnesses, and securing evidence. Mistakes happen, and operating recording equipment can certainly present problems. Even the most well-intentioned officer can be accused of running afoul of discovery obligations when human fallibility meets technology. The solution in these cases is to document the attempt and turn over the item with that documentation, even if it appears to the officer to lack any evidentiary value. However, the failure to do so does not necessitate the dismissal of charges, or even other lesser sanctions.
 

 At the hearing for Defendant's Motion for Sanctions, the trial court considered the materiality of a blank audio file and the circumstances surrounding Lt. Moody's failure to comply with his obligation to provide his complete file to the District Attorney's Office as required by N.C. Gen. Stat. § 15A-910(b). In denying sanctions, the trial court considered the evidence presented and arguments of counsel concerning the recording. It is uncontroverted that Lt. Moody attempted to record the audio of at least one telephone conversation between Defendant and Stanley. Lt. Moody was unfamiliar with the recording device he used and was not successful in preserving the conversation.
 

 The trial court evaluated Lt. Moody's testimony in light of his considerable law enforcement experience and determined that Lt. Moody's explanation about the events surrounding the recording was credible. The trial court even asked questions of Lt. Moody concerning his failure to preserve the audio file, and stated, "I think he said there was nothing useful on it." The trial court went on to state:
 

 I think you're-you're speculating as to what happened and whether there was any information there. And the second line as to whether that information might have
 
 *659
 
 been exculpatory is further speculation. I can't sit here and presume that because the information is not there that it's exculpatory without more, and certainly not with Lieutenant Moody's experience and reputation. I would want more to indulge in any such presumption. It sounds like to me, just to be candid with you, that he bought a piece of electronics and he didn't quite figure out how to use it, because of the gray hair on his head, that the electronics and the details of how to use a new toy like that just didn't-didn't make it into his skill set before he tried to use it. That's what it sounds like to me.
 

 ...
 

 Nothing came through. Not-not the defendant's voice, nobody's voice. That was what I understood from what he said. There was nothing there.
 

 There is nothing in the record that suggests the trial court's decision not to impose sanctions was so arbitrary that it could not have been the result of a reasoned decision, and
 
 *555
 
 we conclude the trial court did not abuse its discretion.
 

 III.
 
 Requested Instruction
 

 Defendant alleges the trial court erred when it failed to provide the following requested instruction to the jury:
 

 When evidence has been received which tends to show that an audio recording of alleged phone calls between Jeremy Stanley and the Defendant was in the exclusive possession of the Macon County Sheriff's Office, has been destroyed and that the Sheriff's Office had notice and understanding of its obligations to preserve and provide its complete investigative file to the Defendant, you may infer, though you are not compelled to do so, that audio recordings would be damaging to the State's case. You may give this inference such force and effect as you determine it should have under all of the facts and circumstances.
 

 We disagree.
 

 Standard of Review
 

 "[Arguments] challenging the trial court's decisions regarding jury instructions are reviewed
 
 de novo
 
 by this Court."
 
 State v. Osorio
 
 ,
 
 196 N.C. App. 458
 
 , 466,
 
 675 S.E.2d 144
 
 , 149 (2009). "[A]n error in jury
 
 *660
 
 instructions is prejudicial and requires a new trial only if 'there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.' "
 
 State v. Castaneda
 
 ,
 
 196 N.C. App. 109
 
 , 116,
 
 674 S.E.2d 707
 
 , 712 (2009) (quoting N.C. Gen. Stat. § 15A-1443(a) (2007) ).
 

 Analysis
 

 "It is the duty of the trial court to instruct the jury on all substantial features of a case raised by the evidence."
 
 State v. Shaw
 
 ,
 
 322 N.C. 797
 
 , 803,
 
 370 S.E.2d 546
 
 , 549 (1988) (citation omitted). "Failure to instruct upon all substantive or material features of the crime charged is error."
 
 State v. Bogle
 
 ,
 
 324 N.C. 190
 
 , 195,
 
 376 S.E.2d 745
 
 , 748 (1989) (citation omitted). "The trial court must give a requested instruction that is supported by both the law and the facts."
 
 State v. Nicholson
 
 ,
 
 355 N.C. 1
 
 , 67,
 
 558 S.E.2d 109
 
 , 152 (2002) (citation omitted).
 

 This Court has previously determined that "destruction of evidence does not amount to the denial of a fair trial unless the defendant can establish (1) the police destroyed the evidence in bad faith; and (2) 'the missing evidence possessed an exculpatory value that was apparent before it was lost.' "
 
 State v. Nance
 
 ,
 
 157 N.C. App. 434
 
 , 444,
 
 579 S.E.2d 456
 
 , 463 (2003) (quoting
 
 State v. Hunt
 
 ,
 
 345 N.C. 720
 
 , 725,
 
 483 S.E.2d 417
 
 , 421 (1997) ). In
 
 State v. Nance
 
 , this Court found the trial court did not err when it declined to give a special instruction requested by the defendant concerning lost evidence because defendant failed to meet both prongs of the test set forth in
 
 Hunt
 
 .
 

 Id.
 

 at 445
 
 ,
 
 579 S.E.2d at 463
 
 .
 

 Such is the case here. Again, Defendant has failed to establish bad faith on the part of Lt. Moody, and, beyond mere speculation, Defendant has failed to show that the blank audio recording contained any exculpatory evidence. As in
 
 Nance
 
 , the trial court did not err when it declined to instruct the jury as requested by Defendant.
 

 Conclusion
 

 "Although defendant may not have received a perfect trial, we are confident, after a thorough review of his case, that he received a fair trial."
 
 State v. Ligon
 
 ,
 
 332 N.C. 224
 
 , 243,
 
 420 S.E.2d 136
 
 , 147 (1992) (quotation marks omitted). As such, we find no error.
 

 NO ERROR.
 

 Judges DIETZ and TYSON concur.