IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-1242

 Filed: 19 November 2019

Wayne County, No. 16 CRS 55186

STATE OF NORTH CAROLINA

 v.

BRANDISS TAYLOR

 Appeal by State from Order entered 12 June 2018 by Judge Phyllis M. Gorham

in Wayne County Superior Court. Heard in the Court of Appeals 5 June 2019.

 Attorney General Joshua H. Stein, by Assistant Attorney General Joseph L.
 Hyde, for the State.

 Strickland Agner Pittman, by Dustin B. Pittman, for defendant-appellee.

 HAMPSON, Judge.

 Factual and Procedural Background

 The State appeals from the trial court’s Order granting Defendant’s Motion to

Dismiss Based on Loss and Destruction of Exculpatory Evidence (Motion to Dismiss).

The Record tends to show the following:

 On 27 November 2016, Brandiss Taylor (Defendant) was arrested and given a

citation for Impaired Driving and Failure to Maintain Lane Control. On 4 December

2017, a Wayne County Grand Jury returned an Indictment charging Defendant with

Habitual Impaired Driving, Driving While License Revoked, and Driving Left of

Center. On 25 April 2018, Defendant filed her Motion to Dismiss, which came on for
 STATE V. TAYLOR

 Opinion of the Court

a hearing in Wayne County Superior Court on 11 June 2018. At the beginning of this

hearing, both the State and Defendant stipulated to the following Factual Allegations

from Defendant’s Motion to Dismiss:

 1. On 27 November 2016 at approximately 1:20 A.M., Trooper
 Adam J. Hostinsky of the North Carolina Highway Patrol
 [(Trooper Hostinsky)] observed a truck merge onto U.S. 117
 South from a parking area;

 2. The truck made a number of maneuvers that alerted [Trooper
 Hostinsky] to its presence and he began to follow. [Trooper
 Hostinsky] noted varying speeds, failure to maintain lane and
 the truck drive left of the center line twice with sharp
 corrections back. In [Trooper Hostinsky’s] words “it appeared
 the driver may be lost or unsure of where they are going;”

 3. Based on those observed traffic violations, [Trooper
 Hostinsky] conducted a traffic stop on the truck and it pulled
 to the side of the road and the “truck was put into park while
 still travelling about 15 MPH;”

 4. When [Trooper Hostinsky] approached the truck, he found two
 people sitting on the passenger side of the truck, [Defendant]
 and another individual named Roy Lee;

 5. [Trooper Hostinsky] indicates in his written notes that he
 identified [Defendant] as the driver and that he “saw the
 driver make their way to the passenger side of the vehicle”
 after the traffic stop was conducted;

 6. [Defendant] has from the very beginning denied driving the
 truck that night and has maintained that throughout the life
 of this case;

 7. As early as 28 November 2016, Trooper Hostinsky notes that
 [Defendant] was being considered for the felony charge of
 Habitual Impaired Driving;

 -2-
 STATE V. TAYLOR

 Opinion of the Court

8. On 16 December 2016, less than 30 days after the initial DWI
 charge was filed, agents of the Office of the District Attorney
 began requesting certified copies of records of prior convictions
 of [Defendant], presumably to prepare an indictment for
 Felony Habitual Impaired Driving; . . . .

9. On 29 December 2016, thirty-two (32) days after the traffic
 stop was conducted, Trooper Hostinsky submitted his
 investigative file to the Office of the District Attorney and
 certified his compliance with N.C. Gen. Stat. § 15A-501(6) in
 gathering “all materials and information acquired in the
 course of all felony investigations;” . . . .

10. On 28 July 2017, [defense counsel] filed a “Request for
 Voluntary Discovery (Alternative Motion to Compel
 Discovery) in a Driving While Impaired Case; . . . .

11. Even though the investigative file was submitted some seven
 months before the request, discovery was not released to
 [defense counsel] until 6 December 2017 as [defense counsel]
 has been informed multiple times by Assistant District
 Attorneys and their staff that “discovery does not exist in
 district court” especially as it relates to Driving While
 Impaired offenses;

12. In the request for discovery, Defendant makes specific request
 for any and all video including Dash Camera and Body
 Camera footage;

13. The case was submitted to the Grand Jury in December 2017
 and a true bill of indictment was returned for Felony Habitual
 Impaired Driving;

14. [Defense counsel] made additional request of the State for the
 Dash Camera footage in January of 2018;

15. [Defense counsel] was informed in February 2018 that the
 video had been deleted from the “local server” and the
 Highway Patrol was attempting to locate it from other sources;

 -3-
 STATE V. TAYLOR

 Opinion of the Court

 16. [Defense counsel] was informed in March of 2018 that the
 video had been “purged” and was not available for release;

 17. Upon information and belief, it is the policy of the North
 Carolina Highway Patrol to only download and release dash
 camera footage upon request of the Office of the District
 Attorney;

 18. Upon information and belief, it is the policy of the North
 Carolina Highway Patrol to maintain video for ninety (90)
 days following its creation unless such a request is made;

 19. Upon information and belief, the Office of the District
 Attorney was notified of this policy and the existence of this
 video while it was still in existence, at least prior to 3 February
 2017, and failed to take adequate steps to ensure its
 preservation.

 After hearing testimony from Trooper Hostinsky and arguments from the

State and defense counsel, the trial court took the matter under advisement. On 12

June 2018, the trial court entered its Order granting Defendant’s Motion to Dismiss.

In this Order, the trial court concluded that the dash camera footage was relevant,

“material[,] and exculpatory in nature” and that the State’s failure to provide this

evidence flagrantly violated Defendant’s constitutional rights and caused irreparable

prejudice to Defendant. Based on this conclusion, the trial court dismissed the

charges against Defendant pursuant to N.C. Gen. Stat. § 15A-954(a)(4). On 14 June

2018, the State timely filed Notice of Appeal. See N.C. Gen. Stat. § 15A-1445(a)(1)

(2017) (allowing the State to appeal “[w]hen there has been a decision . . . dismissing

criminal charges as to one or more counts”).

 -4-
 STATE V. TAYLOR

 Opinion of the Court

 Issue

 The sole issue on appeal is whether the trial court erred by concluding the

destruction of the dash camera footage violated Defendant’s Brady protections,1

requiring dismissal of the charges against Defendant.

 Analysis

 I. Standard of Review

 In reviewing a trial court’s grant of a criminal defendant’s motion to dismiss,

we are “strictly limited to determining whether the trial judge’s underlying findings

of fact are supported by competent evidence, in which event they are conclusively

binding on appeal, and whether those factual findings in turn support the judge’s

ultimate conclusions of law.” State v. Williams, 362 N.C. 628, 832, 669 S.E.2d 290,

294 (2008) (citation and quotation marks omitted). We, however, review a trial

court’s conclusions of law de novo. See State v. Biber, 365 N.C. 162, 168, 712 S.E.2d

874, 878 (2011) (citations omitted).

 II. Motion to Dismiss

 Section 15A-954(a)(4) of our General Statutes requires a trial court to dismiss

criminal charges where a “defendant’s constitutional rights have been flagrantly

violated and there is such irreparable prejudice to the defendant’s preparation of his

case that there is no remedy but to dismiss the prosecution.” N.C. Gen. Stat. § 15A-

 1 See Brady v. Maryland, 373 U.S. 83, 10 L. Ed. 2d 215 (1963).

 -5-
 STATE V. TAYLOR

 Opinion of the Court

954(a)(4) (2017). Defendant has “the burden of showing the flagrant constitutional

violation and of showing irreparable prejudice to the preparation of his case.”

Williams, 362 N.C. at 634, 669 S.E.2d at 295. Because this Statute “contemplates

drastic relief,” our Supreme Court has cautioned that “a motion to dismiss under its

terms should be granted sparingly.” Id. (citation and quotation marks omitted).

 “Whether a failure to make evidence available to a defendant violates the Due

Process Clause of the Fourteenth Amendment to the United States Constitution and

Article I, Sections 19 and 23 of the North Carolina Constitution depends in part on

the nature of the evidence at issue.” State v. Taylor, 362 N.C. 514, 525, 669 S.E.2d

239, 252 (2008) (citation omitted). In Brady, the United States Supreme Court held

that “suppression by the prosecution of evidence favorable to an accused upon request

violates due process where the evidence is material either to guilt or to punishment,

irrespective of the good faith or bad faith of the prosecution.” 373 U.S. at 87, 10 L.

Ed. 2d at 218 (emphasis added). However, “when the evidence is only potentially

useful or when no more can be said of the evidence than that it could have been

subjected to tests, the results of which might have exonerated the defendant, the

state’s failure to preserve the evidence does not violate the defendant’s constitutional

rights unless the defendant shows bad faith on the part of the state.” Taylor, 362

N.C. at 525, 669 S.E.2d at 253 (emphasis added) (alteration, citations, and quotation

marks omitted).

 -6-
 STATE V. TAYLOR

 Opinion of the Court

 Here, the trial court concluded the destruction of the dash camera footage

constituted a Brady violation, requiring dismissal of Defendant’s charges. In

reaching this conclusion, the trial court determined the dash camera footage was

“material and exculpatory in nature[.]” However, the trial court made no findings

concerning what the dash camera footage would have shown and, on this record, could

not have made such a finding because there is no actual record of what it may have

shown. Rather, the dash camera footage was only “potentially useful” to Defendant,

which requires Defendant to establish bad faith on the part of the State in order to

show a constitutional violation. Id. (citations and quotation marks omitted); see State

v. Dorman, 225 N.C. App. 599, 621, 737 S.E.2d 452, 466-67 (2013) (holding bones of

the alleged victim that were destroyed prior to the defendant being able to examine

them made it “speculative to evaluate to what degree, if at all, those bones would

have been material and favorable to [the defendant’s] case . . . [and thus the

defendant] cannot meet his burden of demonstrating the evidence was actually, as

opposed to potentially, material and favorable to his defense”). Therefore, because

the dash camera footage was not exculpatory but rather only potentially exculpatory,

the trial court erred by applying the Brady analysis and by concluding its destruction

warranted dismissal, irrespective of bad faith on the part of the State. See Taylor,

362 N.C. at 525, 669 S.E.2d at 253 (citations omitted).

 -7-
 STATE V. TAYLOR

 Opinion of the Court

 Instead, the trial court was required to assess whether or not the footage was

destroyed in bad faith. Here, because the trial court perceived the destruction of the

dash camera footage to constitute a Brady violation, the trial court made no findings

or conclusions relating to whether the State’s destruction of the dash camera footage

was in bad faith. Therefore, because the trial court erroneously based its ruling on

the dash camera footage, in fact, being exculpatory and thus controlled by Brady, we

remand the matter to the trial court for a determination of whether, on these facts,

the State’s destruction of the footage was done in bad faith. See State v. Young, 368

N.C. 188, 215, 775 S.E.2d 291, 309 (2015) (“According to well-established North

Carolina law, where a ruling is based upon a misapprehension of the applicable law,

the cause will be remanded in order that the matter may be considered in its true

legal light.” (alteration, citation, and quotation marks omitted)).

 Conclusion

 Accordingly, for the foregoing reasons, we vacate the trial court’s Order and

remand this matter for a determination of whether bad faith existed on the part of

the State in failing to preserve the dash camera footage.

 VACATED AND REMANDED.

 Judge DIETZ concurs.

 Judge BERGER dissents in a separate opinion.

 -8-
 No. COA18-1242 State v. Taylor

 BERGER, Judge, dissenting in separate opinion.

 I respectfully dissent because we should take the additional step of reversing

the trial court’s order.

 Section 15A-954(a)(4) of the North Carolina General Statutes requires a trial

court to dismiss criminal charges where a “defendant’s constitutional rights have

been flagrantly violated and there is such irreparable prejudice to the defendant’s

preparation of his case that there is no remedy but to dismiss the prosecution.” N.C.

Gen. Stat. § 15A-954(a)(4) (2017). The “defendant bears the burden of showing the

flagrant constitutional violation and of showing irreparable prejudice to the

preparation of his case. This statutory provision contemplates drastic relief, such that

a motion to dismiss under its terms should be granted sparingly. ” State v. Williams,

362 N.C. 628, 634, 669 S.E.2d 290, 295 (2008) (citation and quotation marks omitted).

 In Brady v. Maryland, the Supreme Court held “that the suppression by the

prosecution of evidence favorable to an accused upon request violates due process

where the evidence is material either to guilt or to punishment, irrespective of the

good faith or bad faith of the prosecution.” 373 U.S. 83, 87 (1963). However, the

Supreme Court subsequently clarified that “the Due Process Clause requires a

different result when we deal with the failure of the State to preserve evidentiary

material . . . which might have exonerated the defendant.” Arizona v. Youngblood,

488 U.S. 51, 57 (1988). “[U]nless a criminal defendant can show bad faith on the part

of the police, failure to preserve potentially useful evidence does not constitute a

denial of due process of law.” Id. at 58. “However, evidence of bad faith standing
 STATE V. TAYLOR

 Berger, J., Dissenting

alone, even if supported by competent evidence, is not sufficient to support a dismissal

under N.C. Gen. Stat. § 15A-954(a)(4).” State v. Hamilton, ___ N.C. App. ___, ___,

822 S.E.2d 548, 552 (2018) (citation and quotation marks omitted), review dismissed,

___ N.C. ___, 830 S.E.2d 822 (2019), and review denied, ___ N.C. ___, 830 S.E.2d 824

(2019). Thus, a defendant must demonstrate not only that the State’s failure to

preserve potentially exculpatory evidence was done in bad faith, but also that he was

irreparably prejudiced in the preparation of his case in order to show a violation of

due process sufficient to justify dismissal.

 In State v. Hamilton, this Court analyzed a similar issue to the present action.

In Hamilton, the Macon County Sheriff’s Department received a drug trafficking tip

that contained specific information identifying the individuals and vehicles involved.

Id. at ___, 822 S.E.2d at 550. After locating one of the aforementioned vehicles, the

officer stopped the vehicle for failing to stop at a stop sign and conducted a free air

sniff of the car with a K9 unit. Id. at ___, 822 S.E.2d at 550. The K9 unit alerted on

the vehicle and the occupants of the vehicle were arrested with more than two pounds

of methamphetamine in their possession. Id. at ___, 822 S.E.2d at 550. The officer

asked the occupants if they would assist in proving that the defendant was involved

in the drug trafficking, and the occupants agreed. Id. at ___, 822 S.E.2d at 550. The

officer attempted to record the phone call between the defendant and the occupants,

however, no audio was captured because the officer was not familiar with the new

 2
 STATE V. TAYLOR

 Berger, J., Dissenting

equipment. Id. at ___, 822 S.E.2d at 551. At trial, the defendant filed a motion to

dismiss which was denied, and on appeal, the defendant argued that the trial court

erred in denying the motion to dismiss because the State failed to preserve and

disclose the audio recording. Id. at ___, 822 S.E.2d at 551. This Court affirmed the

trial court’s denial and found no bad faith on behalf of the State because the defendant

(1) “had the opportunity to question [the occupant] about his phone call with

[d]efendant,” (2) “cross-examine [the officer] about destruction of the blank audio

recording, and argue the significance of the blank audio recording to the jury,” and

(3) the defendant “failed to show bad faith on the part of [the officer].” Id. at ___, 822

S.E.2d at 552.

 Here, Defendant had the opportunity to cross-examine Trooper Hostinsky

about the loss of the dash camera footage and argue its significance to the jury.

Further, Defendant failed to make a showing that Trooper Hostinsky exercised bad

faith in failing to preserve the dash camera footage. At trial, Trooper Hostinsky

testified to his understanding of the dash camera recording system as follows:

 [Trooper Hostinsky]. So at the initial point in time,
 this is a newer technology for the highway patrol, we were
 given training by a WatchGuard company representative,
 he told us that the way the cameras were to be set up was
 that if we tagged, tagged the videos, whether it be a
 warning stop, a stop for speeding, seatbelts, et cetera, that
 it would be a 90 day retention schedule on the server. He
 said there were four events that which we tagged it would
 remain on the server for three years. As I was initially
 understanding it, the four events for the three year

 3
 STATE V. TAYLOR

 Berger, J., Dissenting

retention schedule was anything involving a pursuit, an
emergency response, a use of force, or a driving while
impaired offense.

[The State]. And since that time have you come to
understand something different about the retention policy?

[Trooper Hostinsky]. Yes, sir.

[The State]. Could you describe that for the Court?

[Trooper Hostinsky]. Just earlier this year after
speaking with our technical services units I learned that
the only incidences that are saved for the three year period
is a chase or a use of force. The emergency response and
the driving while impaired are actually just a 90 day
retention schedule.

[The State]. And, and how did you mark this video?

[Trooper Hostinsky]. As a DWI.

[The State]. Okay. And so, per your knowledge, how long
was this video retained?

[Trooper Hostinsky]. I, I assumed the video would be
available for three years at the time of the incident. . . .

[The State]. Okay. And when did you first speak to the
Wayne County DA’s office about this video?

[Trooper Hostinsky]. The, the earliest recollection I
have of it was either January or February of this year, of
2018.

[The State]. Okay. And could you just sort of briefly
summarize what that was for the Court?

[Trooper Hostinsky]. I was reached out to by Ms.
Tracy Moore asking how she could get a copy of the video,

 4
 STATE V. TAYLOR

 Berger, J., Dissenting

 I told her just simply go to the district office and ask one of
 the sergeants to pull it from the server and burn it onto a
 DVR. I was contacted after that, told that the video was not
 available, so I began to personally reach out to my sergeant
 when I was located here. He said he could not locate the
 video. I then called our technical services unit in Raleigh
 and got ahold of the gentleman who runs the WatchGuard
 platform for us, and after going back and forth with him,
 he attempted to locate it, and the video was not available
 on either the main server or any of their redundancy
 servers.

 ....

 [The State]. Did anyone at the DA’S office ever tell you to
 delete this video?

 [Trooper Hostinsky]. Absolutely not.

 [The State]. Did you ever take any action to delete this
 video?

 [Trooper Hostinsky]. No, sir.

 [The State]. Did you ever . . . did you ever specifically
 choose not to take an action because you had an intention
 to deprive the Defendant of the video in this case?

 [Trooper Hostinsky]. No, sir.

 [The State]. Are you aware of such an intention on the part
 of anybody else in the DA’s office or in law enforcement?

 [Trooper Hostinsky]. No, sir.

 From this testimony, it is apparent that Trooper Hostinsky was given

conflicting information regarding the dash camera recording system, and he was

simply operating under a misunderstanding about how the new system worked. As

 5
 STATE V. TAYLOR

 Berger, J., Dissenting

in Hamilton, there is no evidence in the record that Trooper Hostinsky deleted the

dash camera footage in bad faith. Rather, the testimony at the suppression hearing

tends to show that he made a mistake because he was using a new recording system

without adequate training.

 Defendant failed to demonstrate bad faith on the part of Trooper Hostinsky or

the prosecutor at the hearing. This is plainly evident because the trial court did not

make a finding that either Trooper Hostinsky or the prosecutor acted in bad faith.

Because the evidence presented could not support a finding of bad faith, Defendant

cannot satisfy Youngblood and has failed to show irreparable prejudice. The trial

court’s order of dismissal should be reversed.

 6