STATE OF NORTH CAROLINA v. THEODORE JERRY WILLIAMS

No. 256A08

(Filed 12 December 2008)

## Constitutional Law— right to fair trial—flagrant constitutional violation of rights—irreparable harm—State's destruction of evidence

The Court of Appeals did not err by dismissing the charge of felony assault on a government officer or employee under N.C.G.S. § 15A-954(a)(4) based on the State's destruction of evidence of a poster that contained two photographs of defendant placed on a wall in the offices of the District Attorney for the Twentieth Prosecutorial District depicting defendant without any injuries as he appeared when processed into the Stanly County Detention Center on 17 November 2003 with a caption stating "Before he sued the D.A.'s office," and a second photograph depicting the injured defendant as he appeared when processed back into the Stanly County Detention Center on 20 April 2004 with a caption stating "After he sued the D.A.'s office," because: (1) although the mere making of a poster was not a violation of defendant's constitutional rights for purposes of his motion under *Brady v. Maryland*, 373 U.S. 83 (1963), the flagrant violation of defendant's constitutional rights was found in that on numerous occasions defendant requested specific items of evidence that were favorable to him and material to his defense, but the State failed to provide that evidence, destroyed it, and then stated it could not be produced; (2) the pertinent poster and photographs were relevant to defendant's theory of a conspiracy between Stanly and Union County Law Enforcement and Prosecutors to retaliate against him for the filing of a civil rights complaint, and the evidence also would have tended to prove the partial or complete defense of self-defense against the assault charge since proof of the injuries sustained at the Union County Jail would have tended to show that defendant was not the aggressor; (3) the evidence was material and in its absence it could not be said that defendant would receive a fair trial resulting in a verdict worthy of confidence; and (4) defendant met his burden of showing irreparable prejudice to the preparation of his case by showing defendant could not recreate the evidence, and defendant demonstrated the futility of relying on witness testimony to prove the contents of the poster.

**STATE v. WILLIAMS**

[362 N.C. 628 (2008)]

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 190 N.C. App. 301, 660 S.E.2d 189 (2008), affirming an order entered 18 January 2007 by Judge James E. Hardin in Superior Court, Union County. Heard in the Supreme Court 13 October 2008.

*Roy Cooper, Attorney General, by Derrick C. Mertz, Assistant Attorney General, for the State-appellant.*

*Richard E. Jester for defendant-appellee.*

BRADY, Justice.

This case requires us to decide whether dismissal of a criminal charge against defendant was appropriate under N.C.G.S. § 15A-954(a)(4). In a pretrial hearing, the State admitted to the existence, possession, and destruction of material evidence favorable to defendant and acknowledged that it was impossible to produce the evidence at that time or, by implication, at any future trial. Based on these circumstances, we conclude that the State flagrantly violated defendant's constitutional rights and irreparably prejudiced the preparation of his defense. Accordingly, we find the requirements of N.C.G.S. § 15A-954(a)(4) satisfied and affirm the Court of Appeals.

## BACKGROUND

Theodore Jerry Williams (defendant) was arrested and placed in the Stanly County Detention Center on 17 November 2003 on charges unrelated to the present matter. During February and March 2004 and while in custody in Stanly County, defendant initiated actions in various courts naming an assistant district attorney for Stanly County, the Stanly County Sheriff, and the Stanly County Commissioners for alleged civil rights violations.

After filing these actions, defendant was transferred to the Union County Jail on 19 April 2004. Even though defendant made numerous requests, he received neither the paperwork authorizing nor an explanation for his transfer. Less than twenty-four hours after his arrival at the Union County Jail, defendant was charged with misdemeanor assault on a government official at that facility. The State alleged that defendant punched Union County Sheriff's Deputy Brad Moseley when Deputy Moseley attempted to remove defendant from a holding cell. Defendant denied the allegation and testified that in the early morning hours of 20 April 2004, he was maced and beaten by multiple officers at the Union County Jail, where he sustained severe injuries,

including a broken arm. Defendant testified he was then transferred back to the Stanly County Detention Center midday on 20 April 2004, and photographs were taken of him at that time for reprocessing purposes. The photographs showed the bruises and wounds defendant sustained at the Union County Jail.

Defendant further testified that after the events of 20 April 2004 and while he was being held in Stanly County, two individuals, one of whom was defendant's attorney, informed defendant of a poster they had seen on a wall in the offices of the District Attorney for the Twentieth Prosecutorial District, which included Stanly and Union Counties at the time. The poster contained two photographs of defendant. The first depicted defendant without any injuries as he appeared when processed into the Stanly County Detention Center on 17 November 2003, with a caption stating: "Before he sued the D.A.'s office." The second photograph depicted the injured defendant as he appeared when processed back into the Stanly County Detention Center on 20 April 2004, with a caption stating: "After he sued the D.A.'s office." Defendant testified that after viewing the poster, his attorney began making requests and serving subpoenas to obtain the poster and the photographs used to create the poster. However, defendant never received any of the requested items. At a pretrial hearing in Stanly County on 11 July 2005 concerning charges in that jurisdiction, Assistant District Attorney Stephen Higdon (ADA Higdon) admitted to the existence of the poster, its removal and destruction, and the impossibility of producing it or the original photographs that appeared on the poster.

After defendant was indicted for having attained habitual felon status, the Union County Grand Jury returned a superseding true bill of indictment on 30 October 2006, charging defendant with felony assault on a government officer or employee. Proceeding *pro se*, on 28 November 2006, defendant filed a Motion to Dismiss for Prosecutorial Misconduct and *Brady*[1] Violation, in accordance with N.C.G.S. § 15A-954. A hearing was held on the motion on 18 January 2007. Defendant testified that he helped fill out and serve the subpoenas and that the poster existed at the time the initial subpoenas were served. The State declined to cross-examine or otherwise rebut defendant's evidence and presented no evidence of its own. Instead, the State opposed defendant's motion solely on legal grounds.

1. Referring to *Brady v. Maryland*, in which the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." 373 U.S. 83, 87 (1963).

The salient portions of the trial judge's findings of fact from the hearing include the following:

4) That on April the 19th of 2004 the Defendant was transported to Union County . . . .

. . . .

6) The Defendant alleges that he was assaulted by various officers and members of the Union County Jail. . . . That on April the 20th, 2004, the Defendant was photographed by the staff of the Stanly County Jail . . . .

7) That the photograph of the Defendant made on April 20th, 2004, showed the Defendant's condition during a time relevant to the subject prosecution.

8) That in May of 2004, Detention Officer Becky Green of the Stanly County Sheriff's Office went on an unrelated matter to the Stanly County office of the District Attorney for the 20th Prosecutorial District, that while in the office Ms. Green saw a poster which contained two photographs of the Defendant. One photograph . . . was made when the Defendant was processed into the jail on November 17th of 2003, with a caption saying, in quotation, "Before suing the District Attorney's office," closed quotation, and a second photograph . . . that was made when the Defendant was processed back into the Stanly County Jail between April 19th and 20th of 2004, which showed the Defendant's injuries and was captioned, quotation, "After he sued the District Attorney's office" . . . .

9) That during proceedings regarding this case and upon the request of the Defendant for discovery and disclosure that [ADA] Higdon stated in open court that the poster had been destroyed and was not available, and that the subject photographs originally taken at the Stanly County Jail were not available as well.

Based on these findings of fact, the trial judge concluded the following as a matter of law:

1) That the photographs of the Defendant made during his processing into the Stanly County Jail on November 17th of 2003 and again between April the 19th and 20th of 2004 are relevant and material to the defense of the subject prosecution.

2) That the poster of the photographs described herein was willfully destroyed and not made available to the Defendant although the Defendant made a valid and timely request for same.

3) That the original photographs described herein have not been made available and as represented by the State of North Carolina are unavailable to the Defendant, even though implicitly requested by the Defendant.

4) That due to the destruction or failure of the State to provide this evidence, which is material and may be exculpatory in nature, the Defendant's rights pursuant to the Constitution of the United States and the North Carolina Constitution have been flagrantly violated and there is such irreparable prejudice to the Defendant's preparation of his case that there is no remedy but to dismiss the prosecution.

The State timely appealed to the Court of Appeals, where a majority affirmed the trial court's ruling. *State v. Williams*, 190 N.C. App. 301, ——, 660 S.E.2d 189, 190 (2008). The dissenting judge at the Court of Appeals argued that finding of fact number nine was not supported by competent evidence and that the trial judge's conclusions of law were erroneous. *Id.* at ——, 660 S.E.2d at 196-97 (Tyson, J., dissenting). The State timely appealed to this Court based on the dissent.

## ANALYSIS

In reviewing a trial judge's findings of fact, we are "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982) (citations omitted). Even if "evidence is conflicting," the trial judge is in the best position to "resolve the conflict." *State v. Smith*, 278 N.C. 36, 41, 178 S.E.2d 597, 601, *cert. denied*, 403 U.S. 934 (1971). The decision that defendant has met the statutory requirements of N.C.G.S. § 15A-954(a)(4) and is entitled to a dismissal of the charge against him is a conclusion of law. "Conclusions of law drawn by the trial court from its findings of fact are reviewable *de novo* on appeal." *Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 517, 597 S.E.2d 717, 721 (2004) (citing *Humphries v. City of Jacksonville*, 300 N.C. 186, 187, 265 S.E.2d 189, 190 (1980)). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment" for that of

the lower tribunal. *In re Appeal of The Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003) (citing *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002)).

## I.  FINDING OF FACT NUMBER NINE IS SUPPORTED BY COMPETENT EVIDENCE

The trial judge's order does not falter on finding of fact number nine. That finding of fact states:

> That during proceedings regarding this case and upon the request of the Defendant for discovery and disclosure that [ADA] Higdon stated in open court that the poster had been destroyed and was not available, and that the subject photographs originally taken at the Stanly County Jail were not available as well.

The trial judge found defendant's testimony to be credible. Moreover, defendant's evidence was uncontroverted in that the State offered no evidence and no witnesses at the hearing on 18 January 2007; the State made only a legal argument against the motion to dismiss. Although much of the evidence was ambiguous and the sequence of events was never entirely clarified, the trial court's consideration is limited to the evidence actually presented and matters as to which the court takes judicial notice. Here, an examination of the record shows that the trial judge had several pieces of competent evidence before him to support finding of fact number nine. Defendant testified that his attorney began requesting copies of the poster and pictures after first viewing the poster. Without objection by the State, defendant stated that the poster existed when subpoenas were initially served. One subpoena included in the record was issued to Assistant District Attorneys Nicholas Vlahos and Stephen Higdon dated 31 May 2005. The subpoena ordered ADAs Vlahos and Higdon to appear and testify on 6 June 2005 and to produce the poster or the computer hard drive used to create the poster. After this subpoena was served, a pretrial hearing was conducted on 11 July 2005 in Stanly County concerning several cases against defendant in that jurisdiction. The transcript from that hearing was admitted into evidence before the trial judge in the instant matter. During the 11 July 2005 hearing, ADA Higdon confirmed that the poster did exist, but that it had been "removed" and "destroyed." ADA Higdon made this admission in response to defendant's request for the evidence. The State offered no evidence that the poster was already destroyed before defendant requested it.

STATE v. WILLIAMS

[362 N.C. 628 (2008)]

As to the unavailability of the subject photographs, defendant clearly testified that he did not have the photographs used in the poster and that he never personally saw the poster. Conversely, the State contended for the first time on appeal that defendant and his former counsel admitted to possessing copies of the photographs used in the poster.

On this point, the transcripts reflect that defendant's former counsel stated he had a Stanly County Sheriff's Office booking report with defendant's picture on it. This booking report, however, was never offered as evidence by either side, and furthermore, a former officer of the Stanly County Sheriff's Office, Becky Green, saw the poster and testified that it was "like a mug shot from the jail" but "larger than what the mug shots are." Ms. Green testified that each photograph on the poster was about four by six inches in size. Additionally, the State highlights that defendant appears to have possessed a *side view* photograph of himself when questioning a witness on 18 January 2007. However, the poster in question contained a front view of defendant's face and not a side view. The Court of Appeals majority pointed out that ADA Higdon represented on 11 July 2005 that the actual "photographs" used for the poster "had been 'given to [Assistant District Attorney Nicholas] Vlahos' and had been 'destroyed.'" *State v. Williams*, 190 N.C. App. at ——, 660 S.E.2d at 193 (brackets in original). Regardless, defendant's unrebutted testimony to the trial judge was that he never possessed copies of the photographs.

Based on this evidence, the trial court's finding of fact number nine was supported by competent evidence and is binding on appeal. *See Cooke*, 306 N.C. at 134, 291 S.E.2d at 619.

## II. THERE IS NO REMEDY BUT TO DISMISS THE PROSECUTION

N.C.G.S. § 15A-954(a)(4) requires that upon a defendant's motion, the trial court "must dismiss the charges stated in a criminal pleading if it determines that . . . [a] defendant's constitutional rights have been flagrantly violated and there is such irreparable prejudice to the defendant's preparation of his case that there is no remedy but to dismiss the prosecution." As the movant, defendant bears the burden of showing the flagrant constitutional violation and of showing irreparable prejudice to the preparation of his case. This statutory provision "contemplates drastic relief," such that "a motion to dismiss under its terms should be granted sparingly." *State v. Joyner*, 295 N.C. 55, 59, 243 S.E.2d 367, 370 (1978).

**STATE v. WILLIAMS**

[362 N.C. 628 (2008)]

Section 15A-954(a)(4) was "intended to embody the holding of this Court in *State v. Hill.*" *Id.* (citing Official Commentary to N.C.G.S. § 15A-954). In *Hill*, this Court concluded that the defendant's pretrial motion to dismiss should have been allowed because the defendant was denied his constitutional rights to counsel and to obtain witnesses on his behalf. 277 N.C. 547, 552-54, 178 S.E.2d 462, 465-66 (1971). The denial of the defendant's rights to counsel and to obtain witnesses was particularly egregious because it deprived the defendant in *Hill* of the "only opportunity to obtain evidence which might prove his innocence." *Id.* at 555, 178 S.E.2d at 467. We share a similar concern in the instant case regarding defendant's ability to secure material and favorable evidence.

## A. Flagrant Violation of Constitutional Rights

The trial judge concluded that the State violated defendant's rights under the United States and North Carolina Constitutions. The making and public display of this poster was unprofessional behavior.[2] "[T]he citizen's safety lies in the prosecutor who tempers zeal with human kindness, who seeks truth and not victims, who serves the law . . . and who approaches his task with humility." Robert H. Jackson, *The Federal Prosecutor, in* 31 J. Am. Inst. of Crim. L. & Criminology 3, 6 (1940-41) [hereinafter *The Federal Prosecutor*] (address delivered by the then Attorney General of the United States at the Second Annual Conference of U.S. Attorneys on 1 April 1940 in Washington, D.C.).[3] The mere making of the poster, however, is not a

---

2. After hearing the evidence, the trial judge, the Honorable James E. Hardin, commented:

> I've been in the system now in one form or another since 1979. I spent more than twenty years in the D.A.'s office; I filled five different positions, eleven and a half years as the [elected] D.A. Frankly, if I had two assistants that put together a photographic array like this and made a poster and posted it on the wall making fun of a defendant, even if they can't stand him, they would have had a real problem with me. I got a real problem with this poster . . . . There's no excuse for that. We're going to treat people with dignity and respect even if they're charged with crimes. That's the right thing to do and I think frankly, as prosecutors, we're held to that responsibility ethically, morally and legally.

During oral argument, counsel for the State firmly acknowledged how "inappropriate" it was that this poster had been made and displayed.

3. The making and public display of this poster bring to mind the comments of former United States Attorney General and former United States Supreme Court Justice Robert H. Jackson: "While the prosecutor at his best is one of the most beneficent forces in our society, when he acts from malice or other base motives, he is one of the worst." *The Federal Prosecutor* at 3. A prosecutor "can have no better asset than to have his profession recognize that his attitude toward those who feel his power has been dispassionate, reasonable and just." *Id.* at 4.

violation of defendant's constitutional rights for purposes of his motion under *Brady v. Maryland,* 373 U.S. 83 (1963). The flagrant violation of defendant's constitutional rights is found in that on numerous occasions defendant requested specific items of evidence that were favorable to him and material to his defense, but the State failed to provide that evidence, destroyed it, and then stated it could not be produced.

In *Brady,* the Supreme Court of the United States determined that the Due Process Clause of the Fourteenth Amendment to the United States Constitution required in state criminal cases "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87 (citing U.S. Const. amend. XIV, § 1). Evidence favorable to an accused can be either impeachment evidence or exculpatory evidence. *United States v. Bagley,* 473 U.S. 667, 676 (1985). "Evidence is considered 'material' if there is a 'reasonable probability' of a different result had the evidence been disclosed." *State v. Berry,* 356 N.C. 490, 517, 573 S.E.2d 132, 149 (2002) (quoting *Kyles v. Whitley,* 514 U.S. 419, 434 (1995)). Materiality does not require a "demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." *Kyles,* 514 U.S. at 434 (citation omitted). Rather, defendant must show that the government's suppression of evidence would " 'undermine[] confidence in the outcome of the trial.' " *Id.* (quoting *Bagley,* 473 U.S. at 678).

Although *Brady* does not require that a defendant make a specific request for favorable and material evidence, *see id.* at 433 (citing *Bagley* and *United States v. Agurs,* 427 U.S. 97 (1976)), the record indicates that on numerous occasions preceding the 11 July 2005 hearing, defendant requested specific items of material evidence favorable to his defense. Moreover, public records show subpoenas seeking this evidence dated 20 September 2004, 31 May 2005, 27 January 2006, and 20 February 2006.[4] The subpoenas order that the poster or the computer hard drive used to create the poster be pro-

---

4. While the September 2004, January 2006, and February 2006 subpoenas do not appear to be included as part of the record in the case *sub judice,* they are part of the record in another action arising out of Stanly County. *State v. Williams,* 186 N.C. App. 233, 650 S.E.2d 607 (2007). We take judicial notice of these subpoenas in accordance with our practice of taking "judicial notice of the public records of other courts within the state judicial system." *State v. Thompson,* 349 N.C. 483, 497, 508 S.E.2d 277, 286 (1998) (citing *Alpine Motors Corp. v. Hagwood,* 233 N.C. 57, 62 S.E.2d 518 (1950)).

duced. Yet, defendant never received the requested evidence because the State destroyed it.

Additionally, the evidence was favorable to defendant. As to the assault charge, the evidence would have been admissible at trial for impeachment purposes during defendant's cross-examination of the State's witnesses. Moreover, defendant alleged in his motion that since 19 April 2004, he had been "the victim of a vicious conspiracy between Stanly and Union County Law Enforcement and Prosecutors . . . to retaliate against [him] for the filing of a civil rights complaint in Stanly County Superior Court . . . and a civil rights complaint in the United States District Court." The poster and photographs were certainly relevant to defendant's theory of this conspiracy against him. The evidence also would have tended to prove the partial or complete defense of self-defense against the assault charge, because proof of the injuries sustained at the Union County Jail would have tended to show that defendant was not the aggressor. Therefore, defendant established that the "constitutional duty" of producing this evidence was "triggered." *See Kyles,* 514 U.S. at 434.

Moreover, the evidence was material. In its absence, we cannot say that defendant would receive a fair trial "resulting in a verdict worthy of confidence." *Id.* By demonstrating the value of the evidence for impeachment purposes and to show self-defense, defendant has raised the reasonable probability that confidence in the outcome of a guilty verdict at trial would be undermined because "the favorable evidence could reasonably be taken to put the whole case in such a different light." *Kyles,* 514 U.S. at 435; *see Bagley,* 473 U.S. at 678; *Berry,* 356 N.C. at 517, 573 S.E.2d at 149. Thus, "the constitutional duty" to produce the evidence in the instant matter was "triggered by the potential impact of favorable but undisclosed evidence." *Kyles,* 514 U.S. at 434. "[T]he prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable." *Id.* at 438.

Relying on *State v. Hunt,* 339 N.C. 622, 657, 457 S.E.2d 276, 296 (1994), *State v. Alston,* 307 N.C. 321, 337, 298 S.E.2d 631, 642 (1983), and *State v. Hardy,* 293 N.C. 105, 127, 235 S.E.2d 828, 841 (1977), the State argues that *Brady* is inapposite to the instant matter because *Brady* only requires the State to turn over evidence at trial. We disagree for purposes of the instant matter. At its most fundamental level, the due process principle *Brady* and its progeny protect is concerned with the "avoidance of an unfair trial to the accused. Society wins not only when the guilty are convicted but when criminal trials

are fair; our system of the administration of justice suffers when any accused is treated unfairly." *Brady*, 373 U.S. at 87; *see Bagley*, 473 U.S. at 675 (The prosecutor's duty is "to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial."). The question is whether in the absence of the suppressed evidence a defendant receives a fair trial, "understood as a trial resulting in a verdict worthy of confidence." *Kyles*, 514 U.S. at 434.

> Every person charged with a crime has an absolute right to a fair trial. By this it is meant that he is entitled to a trial before an impartial judge and an unprejudiced jury in keeping with substantive and procedural due process requirements of the Fourteenth Amendment. It is the duty of both the court and the prosecuting attorney to see that this right is sustained.

*State v. Britt*, 288 N.C. 699, 710, 220 S.E.2d 283, 290 (1975) (citations omitted).

Here, ADA Higdon stated that the evidence had been "destroyed" and that he "cannot produce something that does not exist." Accordingly, we conclude that when the State makes a *pretrial* admission to the existence and destruction of evidence requested by the accused which is favorable to him and material to his guilt or punishment, and when the State further discloses that it is impossible to produce the evidence at that time or, by implication, at trial, then in the interest of judicial economy, the trial judge does not need to await a trial and verdict before deciding that a due process violation exists. The violation is already apparent, and any subsequent trial would be fundamentally unfair to defendant. As the Court in *Brady* recognized,

> [a] prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant. That casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice . . . .

373 U.S. at 87-88. If the architecture of injustice is apparent, then the trial judge does not need to allow the prosecution to design the trial any further.[5]

---

5. Ensuring that justice is done is not only the goal of this Court, but it is ultimately an interest of the State itself. *See Berger v. United States*, 295 U.S. 78, 88 (1935). The State of North Carolina " 'wins its point whenever justice is done its citizens in the courts.' " *See Brady*, 373 U.S. at 87 (quoting an inscription on the walls of the United States Department of Justice building).

Indeed, the statute under which we are granting relief contemplates injuries occurring pretrial, during defendant's *"preparation of his case."* N.C.G.S. § 15A-954(a)(4) (2007) (emphasis added). The statute is the procedural mechanism that allows us to give effect to the *Brady* violation before a trial begins. Finally, we note again that section 15A-954(a)(4) was intended to embody the holding in *State v. Hill*, in which this Court held that the trial judge should have allowed the defendant's *pretrial* motion to dismiss based on the deprivation of the defendant's constitutional rights. *See* 277 N.C. at 550, 556, 178 S.E.2d at 464, 467.

In sum, the State's destruction of material, favorable evidence to defendant, and its admission that the evidence could not be produced, warrant the conclusion that any trial commenced against defendant would not comport with our notions of due process. Defendant's constitutional rights were flagrantly violated.

## B. Irreparable Prejudice

Besides a flagrant constitutional violation, to grant defendant relief we must also find "such irreparable prejudice to the defendant's preparation of his case that there is no remedy but to dismiss the prosecution." N.C.G.S. § 15A-954(a)(4). This requirement also derives from *State v. Hill*, in which the defendant was charged with drunken driving, but was not allowed to immediately meet with counsel or witnesses who could have observed him "with reference to his alleged intoxication." 277 N.C. at 553, 178 S.E.2d at 466. This Court's concern in *Hill* regarding the irreparable prejudice to the defendant's ability to "obtain evidence which might prove his innocence," *id.* at 555, 178 S.E.2d at 467, is analogous to our concern for defendant regarding the effect of his being denied material evidence favorable to his defense.

As the party moving for dismissal, defendant has the burden of showing irreparable prejudice to the preparation of his case. Defendant has met his burden in two ways. First, competent evidence supports the trial judge's conclusion that defendant never possessed the original photographs from which the poster was made. Consequently, we cannot remedy this situation by ordering or permitting defendant to re-create an item of evidence he did not originally create and for which he does not possess the raw materials. The State ardently contends that defendant can reproduce the poster, but has offered no evidence to support this claim. Based on defendant's testimony, the evidence before the trial judge was that defendant could not re-create the evidence. Therefore, as this Court said in *Hill*, we

cannot "[u]nder these circumstances . . . assume that which is incapable of proof." *Id.* at 554, 178 S.E.2d at 466.

Second, defendant has demonstrated the futility of relying on witness testimony to prove the contents of the poster. Several of defendant's subpoenas called for ADA Nicholas Vlahos, an alleged creator of the poster, to appear with the poster *and testify*, but Mr. Vlahos never did either. Additionally, defendant presented the transcript of a trial in Stanly County on unrelated charges, during which defendant attempted to question a witness regarding the existence and contents of the poster. At every turn, the State objected to the questions, and the trial judge sustained the objections. Thus, the record reflects that any attempt to introduce witness testimony about the poster at a trial in the instant case would likely be similarly unfruitful. Based on defendant's uncontroverted evidence, the unavoidable conclusion is that he was irreparably prejudiced in the preparation of his case because of the State's destruction of material, favorable evidence.

## CONCLUSION

Beyond the unprofessional nature of this poster, we are satisfied that defendant has met the elements of N.C.G.S. § 15A-954(a)(4). We conclude that no other remedy exists but for the assault charge against defendant to be dismissed. Accordingly, we affirm the Court of Appeals.

AFFIRMED.