IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-839

 Filed: 16 July 2019

Pitt County, No. 17 CVD 1868

CHRISTY KING BUNTING, Plaintiff,

 v.

MICHAEL JOE BUNTING, Defendant.

 Appeal by Defendant from Order entered 24 January 2018 by Judge Brian

DeSoto in Pitt County District Court. Heard in the Court of Appeals 13 February

2019.

 No brief filed by Plaintiff-Appellee

 The Duke Law Firm NC, by W. Gregory Duke, for Defendant-Appellant.

 COLLINS, Judge.

 Defendant appeals from entry of a Domestic Violence Protective Order.

Defendant contends that the trial court erred by entering the Domestic Violence

Protective Order because (1) text messages he sent to Plaintiff did not constitute

harassment as the messages served a legitimate purpose; (2) there was no evidence

that Plaintiff suffered from substantial emotional distress; and (3) the trial court’s

conclusion of law that Defendant committed acts of domestic violence was erroneous

and not supported by adequate findings of fact. Defendant’s arguments lack merit

and we affirm.
 BUNTING V. BUNTING

 Opinion of the Court

 I. Background and Procedural History

 Plaintiff Christy King Bunting and Defendant Michael Joe Bunting were

divorced in 2008 after ten years of marriage. Two children were born of the marriage.

 There is a long and detailed history of domestic violence by Defendant against

Plaintiff, with entry of multiple domestic violence protective orders (“DVPO”) against

Defendant, dating back to 2008. On 29 May 2008, the court entered an ex parte DVPO

against Defendant which remained in effect until 9 June 2008. The court found that

Defendant threatened to kill Plaintiff if she tried to take their children from him after

Plaintiff told Defendant that she wanted a divorce. This DVPO allowed

communications between Defendant and Plaintiff only if the communications

concerned the welfare of their children and were communicated through a third

party.

 On 8 July 2008, the court entered a DVPO against Defendant which remained

in effect until 29 May 2009. The court found that Defendant threatened to kill

Plaintiff. This DVPO allowed communications between Defendant and Plaintiff only

if the communications concerned the welfare of their children and were

communicated through a third party. On or about 16 December 2008, Defendant and

Plaintiff entered into a Consent Order which included provisions for custody of the

children.

 -2-
 BUNTING V. BUNTING

 Opinion of the Court

 Plaintiff filed a Motion for Contempt Against Defendant for violating the 8 July

2008 DVPO,1 which was heard on or about 23 June 2009. On or about 1 July 2009,

Defendant was arrested and charged with violating the 8 July 2008 DVPO.

Defendant’s violations took place over the course of three days, from 5 May 2009

through 7 May 2009, during which time Defendant threatened Plaintiff and told

Plaintiff, “I will kill you;” refused to return the oldest child to Plaintiff after Plaintiff

allowed Defendant extra visitation with the child; called Plaintiff between 15-20

times and left voice messages for Plaintiff, cursing her and telling her that the

children hated her; and kidnapped the youngest child, hid from the police for three

days, and told Plaintiff she would not get the child back. On 2 July 2009, the court

entered an Order for Contempt, granting Plaintiff’s 23 June 2009 motion for contempt

and advising Defendant that he could purge his contempt by, inter alia, “ceas[ing]

and desist[ing] any and all future behavior that would constitute a violation of the

Domestic Violence Protective Order.”

 On 26 August 2009, Defendant was found guilty of violating the 8 July 2008

DVPO which was in place at the date and time of his offenses on 5 May 2009 through

7 May 2009. The court again ordered Defendant to comply with the DVPO and not

to assault or threaten Plaintiff. On 25 September 2009, the court issued an order

 1 The Record on Appeal does not contain the motion, but does contain an Order Modifying
Custody entered 31 January 2012 which makes findings of fact regarding this motion and the trial
court’s disposition of this motion.

 -3-
 BUNTING V. BUNTING

 Opinion of the Court

denying Defendant’s motion to return weapons surrendered under a domestic

violence protective order.2

 On 15 October 2009, the court entered a second Order for Contempt against

Defendant. The court ordered Defendant to refrain from making derogatory

comments about Plaintiff in the presence of the children and “to cease engaging in

behaviors that have a negative impact on the emotional health of the children . . . .”

The order further required Defendant to “immediately engage the services of a

medical or psychological professional[,] . . . [and] to obtain counseling to aid him in

dealing with [his] anger and frustration issues and in controlling his impulsive

behavior.”

 On 27 January 2010, the court entered an ex parte DVPO against Defendant

which remained in effect until 6 February 2010. The court found that Defendant

“repeatedly sent voicemails to the [P]laintiff containing threatening language” and

“threatened to shoot the [P]laintiff.” The court also found that Defendant was

“previously involuntarily committed . . . for threatening suicide.” The court ordered

Defendant to stay away from “any place the [P]laintiff is” and to stay away from the

children’s school. This order allowed communications between Defendant and

 2 The court issued three subsequent orders denying Defendant’s motions to return weapons
surrendered under a domestic violence protective order on 1 May 2015, 15 May 2015, and 19 February
2016.

 -4-
 BUNTING V. BUNTING

 Opinion of the Court

Plaintiff only if the communications concerned the welfare of their children and were

communicated through a third party.

 On 20 May 2010, the court entered a DVPO against Defendant which remained

in effect until 26 January 2011. The court found that Defendant threatened to

seriously injure or kill Plaintiff, and concluded that there was a danger of serious and

immediate injury to Plaintiff. The court ordered Defendant to “comply fully with all

prior custody orders between the parties.” The court included an attachment which

stated,

 Email or Text communication between the parties for the
 sole purposes of facilitating the exchange of the minor
 children, to share necessary information about the minor
 children, or in case of an emergency involving the minor
 children DOES NOT VIOLATE THE “NO CONTACT”
 PROVISION OF THE [DVPO]. Communication between
 the parties on any subject other than that of the minor
 children SHALL BE PROHIBITED AND DOES
 CONSTITUTE A VIOLATION OF THE “NO CONTACT”
 PROVISION.

The court further ordered the parties to communicate exclusively via email or text

message, and banned the use of third parties, with the exception of their respective

attorneys, to communicate with one another.

 On 3 June 2010, Defendant was arrested and charged with violating the 20

May 2010 DVPO. On 16 June 2010, after Defendant committed another violation of

the 20 May 2010 DVPO, a third Order for Contempt was entered against Defendant.

The court found that Defendant “has continued to make derogatory comments about

 -5-
 BUNTING V. BUNTING

 Opinion of the Court

the Plaintiff or the Plaintiff’s parenting skills in the presence of the minor children[,]

. . . [and] has engaged in such harassment and behaviors that have caused the

Plaintiff to fear for her personal safety and that of the children . . . .” On 15 September

2010, Defendant pled guilty to two violations of the DVPO and received an 18-month

suspended sentence. Defendant was again ordered to comply with all terms and

conditions of the DVPO then in place.

 On 1 February 2011, the court renewed the DVPO against Defendant until 26

January 2012. The court added a provision which allowed Defendant to attend the

children’s school activities; however, the court reaffirmed the prohibition against

Defendant having contact with Plaintiff at a school activity, and barred Defendant

from speaking with or approaching the children at a school activity.

 On 18 August 2011, Plaintiff filed a Motion to Modify Custody to Terminate or

Require Defendant’s Visitation to be Supervised. This motion was based on

“Defendant’s continued violation of this Court’s orders and because of the ongoing

psychological and emotional damage to the minor children caused by the Defendant’s

behavior.” Defendant, who was incarcerated at this time, requested two continuances

and the court granted both. The court continued the hearing until 15 November 2011

and ordered Defendant to have no written or verbal contact with the children or with

Plaintiff until the 15 November 2011 hearing. While incarcerated for violating the 1

February 2011 DVPO, Defendant continued to contact Plaintiff and the children.

 -6-
 BUNTING V. BUNTING

 Opinion of the Court

Defendant made phone calls to the children, and also sent numerous letters to the

oldest child which referenced Plaintiff in a derogatory manner.

 On 20 January 2012, the court entered an order renewing the DVPO against

Defendant until 26 January 2013, finding that there was a felony DVPO violation

pending in Superior Court.

 On 31 January 2012, the court entered an Order Modifying Custody (“Custody

Order”) which contained 20 detailed findings of fact. The court found an extensive

history of domestic violence by Defendant against Plaintiff. The court also found that

“Defendant’s behavior had caused the minor children to experience stress and

anxiety[;]” that Defendant admitted that he talks to the children about their mother

because “he thinks they need to know the truth about her[;]” and that Defendant

thinks the children do not need therapy because therapy “just makes things worse.”

 The court further found that Defendant has acted in ways “to harass the

Plaintiff, causing her significant emotional stress, and to negatively impact her

relationship with the minor children and has engaged in a lengthy and persistent

campaign to alienate the minor children from the Plaintiff.” The court found that

“Defendant has been repeatedly ordered by this Court to refrain from [his] actions

and behavior[,] . . . he has completely ignored said orders and warnings[,] . . . and

instead appears to have escalated said behavior and has on more than one occasion

expressed his disdain for the orders of this court.” The Custody Order required

 -7-
 BUNTING V. BUNTING

 Opinion of the Court

Defendant to complete a psychological evaluation and provide the results to the court;

enroll in and complete counseling with a licensed therapist; and remain in therapy

until such time as the therapist releases him from therapy and recommends that

Defendant should be allowed to resume unsupervised visitation with the children.

 The Custody Order granted Plaintiff sole legal and physical custody of the

children, and allowed Defendant to have one, two-hour supervised visit per month

with the children at The Family Center. It required The Family Center staff to

supervise the exchange of the children at the visits so that Plaintiff would not have

contact with Defendant. The Custody Order also included a no-contact provision (the

“Provision”) which declared, “other than the two hours of supervised visitation with

the minor children . . . the Defendant shall have no written, verbal, telephonic, or

electronic contact with the minor children or the Plaintiff.” (emphasis added)

 On 11 January 2013, the court entered an order renewing the DVPO against

Defendant until 20 January 2015. The court found that “there have been ongoing

incidents since 2008 and a criminal matter [against Defendant] is set for 31 January

2013.”

 On 9 September 2015, the court entered an ex parte DVPO against Defendant

which remained in effect until 19 September 2015. The court found that Defendant

has a “significant DVPO violation history” and that “Defendant appears to be

noncompliant with [the] custody order addressing contact with the Plaintiff.” The

 -8-
 BUNTING V. BUNTING

 Opinion of the Court

court also found that Defendant threatened to use a deadly weapon against Plaintiff;

made threats to seriously injure or kill Plaintiff; and made serious threats to commit

suicide in the past. The court ordered Defendant to comply with the Custody Order.

 On 2 October 2015, the court entered a DVPO against Defendant which

remained in effect until 1 October 2016. The court ordered Defendant to have no

contact with Plaintiff, except through an attorney, and specifically removed language

from the order which would have allowed Defendant to communicate with Plaintiff if

the communications regarded the welfare of the children. The court found that

Defendant called Plaintiff several times and wrote Plaintiff a letter, in violation of

the Custody Order. The court again ordered Defendant to comply with the Custody

Order.

 On 31 July 2017, Plaintiff filed a complaint and motion for a DVPO against

Defendant alleging that he sent her six text messages, the texts were unsolicited and

had become more frequent and accusatory in tone, the texts were in violation of the

no-contact Provision in the Custody Order, and the text messages caused her distress,

anxiety, and fear, in light of the “tortuous history” of abuse by Defendant against

Plaintiff and their children. Upon review of Plaintiff’s complaint and motion, the trial

court entered an ex parte DVPO against Defendant. On 24 January 2018, following

a hearing, the trial court entered a Domestic Violence Protective Order (the “Order”).

From entry of the Order, Defendant appeals.

 -9-
 BUNTING V. BUNTING

 Opinion of the Court

 II. Discussion

 On appeal, Defendant argues that (1) the six text messages he sent to Plaintiff

did not constitute harassment because the text messages, that discussed the children,

served a legitimate purpose; (2) there was no evidence that Plaintiff suffered from

substantial emotional distress; and (3) the trial court’s conclusion of law that

Defendant committed acts of domestic violence was erroneous and not supported by

adequate findings of fact.

A. Standard of Review

 “When the trial court sits without a jury regarding a DVPO, the standard of

review on appeal is whether there was competent evidence to support the trial court’s

findings of fact and whether its conclusions of law were proper in light of such facts.

Where there is competent evidence to support the trial court’s findings of fact, those

findings are binding on appeal.” Kennedy v. Morgan, 221 N.C. App. 219, 220-21, 726

S.E.2d 193, 195 (2012) (citation omitted). The trial court’s “conclusions of law are

reviewable de novo on appeal.” Wornstaff v. Wornstaff, 179 N.C. App. 516, 520-21,

634 S.E.2d 567, 570 (2006) (quotation marks and citation omitted).

B. Domestic Violence Protective Orders

 “Any person residing in this State may seek relief under . . . Chapter [50B] by

filing a civil action or by filing a motion in any existing action filed under Chapter

[50B] of the General Statutes alleging acts of domestic violence against himself or

 - 10 -
 BUNTING V. BUNTING

 Opinion of the Court

herself or a minor child who resides with or is in the custody of such person.” N.C.

Gen. Stat. § 50B-2(a) (2018). “‘If the court . . . finds that an act of domestic violence

has occurred, the court shall grant a protective order restraining the defendant from

further acts of domestic violence.’” Kennedy, 221 N.C. App. at 221, 726 S.E.2d at 195

(quoting N.C. Gen. Stat. § 50B-3(a) (2011)). “Although N.C. Gen. Stat. § 50B-3(a)

states that the trial court must ‘find’ that an act of domestic violence has occurred, in

fact this is a conclusion of law[.]” Id. at 223 n.2, 726 S.E.2d at 196 n.2. Domestic

violence is defined as “[p]lacing the aggrieved party or a member of the aggrieved

party’s family or household in fear of imminent serious bodily injury or continued

harassment, as defined in [N.C. Gen. Stat. §] 14-277.3A, that rises to such a level as

to inflict substantial emotional distress . . . .” N.C. Gen. Stat. § 50B-1(a)(2) (2018).

C. Fear of Continued Harassment

 Defendant first argues that the six text messages he sent to Plaintiff did not

place Plaintiff in fear of continued harassment because the text messages, that

discussed the children, served a legitimate purpose. Defendant’s argument is

meritless.

 Harassment is defined as “[k]nowing conduct . . . directed at a specific person

that torments, terrorizes, or terrifies that person and that serves no legitimate

purpose.” N.C. Gen. Stat. § 14-277.3A(b)(2) (2018). “The plain language of the statute

requires the trial court to apply only a subjective test to determine if the aggrieved

 - 11 -
 BUNTING V. BUNTING

 Opinion of the Court

party was in actual fear; no inquiry is made as to whether such fear was objectively

reasonable under the circumstances.” Wornstaff, 179 N.C. App. at 518-19, 634 S.E.2d

at 569. Defendant does not contest that the texts he sent Plaintiff were (1) knowing;

(2) directed at Plaintiff; and (3) tormented, terrorized, or terrified Plaintiff.

Defendant does argue that the text messages served a legitimate purpose. Whether

conduct served a legitimate purpose is a factual inquiry. See State v. Wooten, 206

N.C. App. 494, 501, 696 S.E.2d 570, 575-76 (2010) (examining the circumstances

surrounding faxes defendant sent the victim and concluding that, despite defendant’s

contention that the faxes were sent in reply to correspondence from public officials,

the communications served no legitimate purpose).

 From 2007 through 2012, Plaintiff obtained four DVPOs against Defendant.

Plaintiff renewed those four DVPOs when allowed, and obtained new DVPOs when

the original orders and their renewals expired. Throughout this time period,

Defendant repeatedly violated the DVPOs in numerous ways, including by contacting

Plaintiff via phone calls, emails, text messages, and by showing up in-person. Prior

to entry of the Custody Order, Defendant was permitted to contact Plaintiff if the

communications were in regard to their children. However, over the course of five

years, Defendant violated the various protective orders and restrictions on his

contact, and was held in contempt for refusing to obey court orders.

 - 12 -
 BUNTING V. BUNTING

 Opinion of the Court

 In 2012, after Defendant committed additional violations of the DVPO that

was in place at the time, Plaintiff was granted sole legal and physical custody of the

children. The Custody Order and no-contact Provision prohibited Defendant from

contacting Plaintiff in any manner, and prohibited Defendant from contacting the

children in any manner outside of the one, two-hour supervised visit per month.

Further, the court found that Defendant “disregarded all Orders of this Court . . .

[and] has been repeatedly ordered by the Court to refrain from the actions and

behaviors in which he has continued to engage[.]” The court also found that

Defendant “has completely ignored said orders and warnings and the

recommendations of the [child’s psychologist], and instead appears to have escalated

said behavior and has on more than one occasion expressed his disdain for the orders

of this court.”

 As Defendant was under a court order to have no contact with Plaintiff as a

result of his prolonged egregious behavior, and because Defendant had no custody of

the children, Defendant’s text messages to Plaintiff allegedly concerning their

children were in direct violation of the court’s order and did not serve a legitimate

purpose. See Wooten, 206 N.C. App at 501, 696 S.E.2d at 575-76; see also Stancill v.

Stancill, 241 N.C. App. 529, 542-43, 773 S.E.2d 890, 899 (2015) (concluding that

defendant’s text messages to plaintiff regarding aggressive negotiations of a shared

 - 13 -
 BUNTING V. BUNTING

 Opinion of the Court

property settlement were not for a legitimate purpose and amounted to harassment).

Defendant’s argument is overruled.

D. Emotional Distress

 Defendant next argues that there was no evidence that Plaintiff suffered from

substantial emotional distress as a result of the six text messages, and thus there

was no competent evidence to support the trial court’s findings of fact that

Defendant’s harassment of Plaintiff inflicted substantial emotional distress. This

argument too is unavailing.

 Upon review of a trial court’s findings of fact, “we are strictly limited to

determining whether the . . . underlying findings of fact are supported by competent

evidence . . . .” State v. Williams, 362 N.C. 628, 632, 669 S.E.2d 290, 294 (2008)

(quotation marks and citation omitted). Competent evidence, in the form of victim

testimony and a detailed history of domestic violence, supports a court’s finding that

an act of domestic violence occurred. Thomas v. Williams, 242 N.C. App. 236, 773

S.E.2d 900 (2015). “Substantial emotional distress” is defined as “[s]ignificant mental

suffering or distress that may, but does not necessarily, require medical or other

professional treatment or counseling.” N.C. Gen. Stat. § 14-277.3A(b)(4) (2018).

 In Thomas, there was sufficient evidence that plaintiff suffered substantial

emotional distress as a result of a voice mail defendant left plaintiff. Thomas, 242

N.C. App. at 244, 773 S.E.2d at 905. Plaintiff ended her relationship with defendant

 - 14 -
 BUNTING V. BUNTING

 Opinion of the Court

after only a few weeks, as she was afraid of defendant; defendant continued to contact

plaintiff, despite her requests that he stop, which caused plaintiff to file a complaint

and motion for DVPO. Id. at 237, 773 S.E.2d at 901-02. Defendant continued to

contact plaintiff, and was arrested for stalking. Following his arrest, defendant called

plaintiff and left her a voicemail wherein he stated, “you put me through hell. Now

it’s your turn.” Id. at 238, 773 S.E.2d at 902. At the DVPO hearing, plaintiff testified

that the voicemail caused her to experience distress and trouble sleeping, and caused

her to have to leave her new job several times to deal with the defendant’s actions.

Id. This Court concluded that plaintiff’s testimony, combined with defendant’s

repeated unwelcome contact, was sufficient competent evidence that defendant

caused plaintiff substantial emotional distress. Id. at 244, 773 S.E.2d at 905.

 As in Thomas, there is sufficient competent evidence in this case that Plaintiff

suffered substantial emotional distress as a result of Defendant’s text messages. Like

in Thomas, Plaintiff testified about her fear of Defendant, and that Defendant’s text

messages caused her anxiety and distress. Plaintiff testified that Defendant’s text

messages made her feel “worried about what’s going to happen . . . . I mean he’s

repeatedly said he was going to kill me. He’s kidnapped [the youngest child]. He’s

beaten [the oldest child]. I just -- I’m worried about my whole household whenever I

get these. I don’t know what’s happening, if he’s watching us, if he’s trying to follow

 - 15 -
 BUNTING V. BUNTING

 Opinion of the Court

us. He’s followed me in his truck before and tried to run me off the road. I just have

to be concerned.”

 Plaintiff acknowledged that Defendant’s texts, on their face, could appear

“benign” if one did not know of Defendant’s history of abuse against Plaintiff.

However, Plaintiff testified that Defendant’s texts make her feel “like [Defendant] is

. . . after me or something bad is going to happen when I hear from him.” She testified,

 I don’t go anywhere without looking around, being aware
 of my surroundings, being aware of exits and entrances and
 how I’m going to get from one place to another. Where I
 live is not somewhere you can easily get to. I have large
 dogs, I have a security light, security system. I just put a
 lot of things in place to protect myself and the children.

She further explained that “the first place I moved had a garage and a fence so I could

be totally surrounded.”

 Plaintiff received one of the six text messages from Defendant while she was

out shopping for the children. She testified that, upon receiving the text, “I put

everything down and ran to my car and I sent the messages to -- one to my uncle and

I sent one to [my lawyer’s] office and I sent one to my friend and then I got in my car

and started driving until I had to pick [the oldest child] up.” Plaintiff explained that,

when she receives a communication from Defendant, it is her practice to forward it to

“at least 2 people immediately in case something happens and so they can help me

calm down. I go into a state of alarm, and usually do not feel at ease until I can get

home and have the children there with me.”

 - 16 -
 BUNTING V. BUNTING

 Opinion of the Court

 As in Thomas, where the defendant’s repeated unwelcome contact, combined

with the plaintiff’s lifestyle alteration and her testimony that she lived in fear of the

defendant, was sufficient evidence to show that the plaintiff experienced substantial

emotional distress, here, Plaintiff’s testimony that Defendant’s repeated contact

caused her to feel terror, to change her housing arrangements, and to alter her daily

routine is sufficient evidence of substantial emotional distress. Thomas, 242 N.C.

App. at 244, 773 S.E.2d at 905. Defendant’s argument is without merit.

E. Adequate Findings of Fact

 Defendant finally argues that the trial court’s conclusion of law that Defendant

committed acts of domestic violence was erroneous and not supported by adequate

findings of fact. We disagree.

 “[W]e are strictly limited to determining whether the . . . underlying findings

of fact are supported by competent evidence, in which event they are conclusively

binding on appeal, and whether those factual findings in turn support the judge’s

ultimate conclusions of law.” Williams, 362 N.C. at 632, 669 S.E.2d at 294 (quotation

marks and citation omitted).

 In support of its conclusion that Defendant committed acts of domestic violence

against Plaintiff, the trial court found as follows:

 The Defendant has a history of domestic violence against
 the Plaintiff including threats to kill her and convictions
 for violating a Domestic Violence Order of Protection. On
 January 31, 2012 the Honorable David Leech ordered that

 - 17 -
 BUNTING V. BUNTING

 Opinion of the Court

 Defendant shall have no written, verbal, telephonic, or
 electronic contact with Plaintiff. Despite Judge Leech’s
 Order and against Plaintiff’s wishes, Defendant sent
 Plaintiff six text messages between December 5, 2016 and
 July 25, 2017. Defendant’s text messages have caused
 Plaintiff to fear for [her] safety. Plaintiff feels as if the
 Defendant is watching her and she has to constantly be
 aware of her surroundings.

Defendant argues that these findings do not support the trial court’s conclusion that

Defendant committed acts of domestic violence because it is analogous to the “vague

finding of a general history of abuse” in Kennedy that was insufficient to support the

conclusion of law that defendant committed an act of domestic violence. Kennedy,

221 N.C. App. at 223, 726 S.E.2d at 196.

 In Kennedy, the trial court found, “after a long history of abuse plaintiff . . .

remains afraid of the defendant who tries to intimidate her—surveillance on her

house at late hours, making the plaintiff and her neighbors apprehensive.” Id. at

220, 726 S.E.2d at 196 (brackets omitted). However, this Court determined the

specific dates and facts concerning the “long history of abuse” were unclear, but that

it was “clear that defendant’s recent act of hiring a PI service, and not the history of

abuse, was the basis for the trial court’s decision to enter the DVPO[.]” Id. at 223,

726 S.E.2d at 196 (quotation marks and brackets omitted). This Court thus concluded

that “a vague finding of a general ‘history of abuse’ is not a finding of an ‘act of

domestic violence’ as defined by N.C. Gen. Stat. § 50B-3(a).” Id.

 - 18 -
 BUNTING V. BUNTING

 Opinion of the Court

 Unlike in Kennedy, Plaintiff provided detailed evidence, as recited throughout

this opinion, to support the court’s findings that “Defendant has a history of domestic

violence against the Plaintiff including threats to kill her and convictions for violating

a DVPO” and that Defendant was to have no contact with Plaintiff or the children,

per court order. Plaintiff provided the trial court with exact dates, court documents,

therapist notes, and psychiatric recommendations regarding Defendant’s abusive

conduct.

 Based on the copious, detailed evidence before it, the trial court made specific

findings regarding Defendant’s history of domestic violence against Plaintiff and

Defendant’s repeated harassment of Plaintiff in violation of a court order. The trial

court’s findings were supported by competent evidence, and the findings supported

the conclusion of law that Defendant committed acts of domestic violence.

 III. Conclusion

 There was competent evidence to support the trial court’s findings of fact that

Defendant placed Plaintiff in fear of continued harassment that rose to such a level

as to inflict substantial emotional distress. Moreover, the findings of fact support the

ultimate conclusion of law that Defendant committed acts of domestic violence

against Plaintiff. The trial court’s Order is affirmed.

 AFFIRMED.

 Judges DILLON and INMAN CONCUR.

 - 19 -