An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-225

Filed 17 December 2025

Gaston County, No. 23CRS305026-350

STATE OF NORTH CAROLINA

v.

OSTIL FLORES-ROCA

Appeal by Defendant from order entered on 28 October 2024 by Judge Justin N. Davis in Gaston County Superior Court. Heard in the Court of Appeals 18 November 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Robert T. Broughton, for the State-Appellee.*
>
> *Darren Jackson for Defendant-Appellant.*

COLLINS, Judge.

Defendant Ostil Flores-Roca appeals from the trial court's order denying his motion to suppress evidence obtained during a checkpoint. Defendant argues that the checkpoint was improper pursuant to federal and state constitutional law and statutory law. For the reasons discussed below, we affirm the trial court's order.

## I. Background

Belmont Police Department Sergeant McRee authorized a checkpoint on 12 May 2023 at the intersection of Keener Boulevard and Parkdale Drive in Belmont, N.C., due to speeding complaints. The checkpoint was set up to check for any motor vehicle violations under Chapter 20 of our General Statutes. Defendant was stopped by three Belmont officers at the checkpoint. Defendant was subsequently charged with driving while impaired, no operator's license, and an open container violation.

Defendant filed a motion to suppress in district court, moving to suppress all evidence obtained during the traffic stop, arguing the checkpoint violated his federal and state constitutional rights and state law. The motion was denied. Judgment was entered upon Defendant's plea of guilty to driving while impaired. Defendant appealed the judgment to the superior court.

Defendant filed his motion to suppress in superior court, and his motion came on for hearing on 2 October 2024. Two out of the three arresting officers testified, and documentary evidence was admitted. The trial court concluded that there was sufficient supervisory approval for the checkpoint, and that the checkpoint was reasonable, constitutional, and proper pursuant to federal and state constitutional law. The motion to suppress was denied.

The court found the following findings of fact:

1. That on May 12, 2023, Officer Dunlap, Officer Guffie, and Sergeant McRee were on duty and determined that a checkpoint was to be established at Keener Boulevard and Parkdale Drive.

2. That this checkpoint was conducted pursuant to Belmont Police

Department policy (State's Exh. 1) that was effective August 16, 2018.

3. That the checkpoint supervisor, Sergeant McRee[,] personally approved conducting a checkpoint on that date and time.

4. That while no "Authorization for Checkpoint" form was filled out, Sergeant McRee testified that the Traffic License Check Record (State's Exh. 2) acted as an approval form.

5. That the location at Keener Boulevard and Parkdale Drive was chosen due to speeding complaints on these roads.

6. That this checkpoint's purpose, as both Sergeant McRee and Officer Dunlap testified, was to enforce all Chapter 20 violations. This is also evidenced by the Traffic License Check Record (State's Exh. 2).

7. That speeding, which is an issue at the location of the checkpoint, is a grave public concern due to public safety.

8. That a checkpoint in a location with a speeding issue is a way of addressing that concern.

9. That this checkpoint occurred at 2:00 AM, there were not a lot of cars on the road, and that the time to stop a vehicle and check for identification and registration would have been only ten to fifteen seconds per vehicle, and therefore there was little interference with individual liberty.

10. That the Defendant was the first car to pass through the checkpoint.

11. That the Defendant did not present a valid driver's license and presented indications of other Chapter 20 violations, including Driving While Impaired.

12. That due to the number of people in the [D]efendant's vehicle, there were officer safety issues which prevented officers from stopping other cars while the stop of the Defendant was ongoing.

13. That the Court made additional findings of fact on the record in open court.

Defendant pled no contest to driving while impaired while preserving his right

to appeal the denial of his motion to suppress. The no operator's license and open container violation charges were dismissed pursuant to the plea agreement. Defendant was sentenced accordingly. From the denial of his motion to suppress and the judgment entered upon his guilty plea to driving while impaired, Defendant appeals.

## II.    Discussion

Defendant argues that the trial court erred by denying his motion to suppress because the checkpoint was not reasonable, constitutional, and proper pursuant to federal and state constitutional law.

### A. Standard of Review

"The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Biber*, 365 N.C. 162, 167-68 (2011) (citation omitted). "When supported by competent evidence, the trial court's factual findings are conclusive on appeal, even where the evidence might sustain findings to the contrary." *State v. Hall*, 268 N.C. App. 425, 428 (2019) (citation omitted). "Unchallenged findings of fact are binding on appeal." *State v. Fizovic*, 240 N.C. App. 448, 451 (2015) (citation omitted). "We review the trial court's conclusions of law on a motion to suppress de novo." *State v. Ladd*, 246 N.C. App. 295, 298-99 (2016) (italics and citation omitted). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the

lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33 (2008) (cleaned up).

The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures. U.S. Const. amend. IV. "[T]he Fourth Amendment reasonableness standard usually requires that a search or seizure be based on either consent or individualized suspicion of the person to be searched or seized." *State v. Veazy*, 191 N.C. App. 181, 184 (2008). "Article I, Section 20 of the North Carolina Constitution similarly prohibits unreasonable searches and seizures." *State v. Furtch*, 289 N.C. App. 413, 418 (2023) (citation omitted). "Our state constitution has not been interpreted to provide 'any enlargement or expansion of rights beyond those afforded in the Fourth Amendment[.]' Thus, [the Appellate] Court need not inquire whether defendant enjoys greater protection under our State's constitutional guarantee against unreasonable searches and seizures." *State v. Gore*, 272 N.C. App. 98, 104 (2020) (citing *State v. Garner*, 331 N.C. 491 (1992)).

To determine whether a checkpoint meets constitutional requirements, the court must 1) "determine the primary programmatic purpose of the checkpoint," and 2) if a legitimate purpose is found, "must judge its reasonableness . . . on the basis of individual circumstances." *Veazy*, 191 N.C. App. at 185; *Illinois v. Lidster*, 540 U.S. 419, 426 (2004). Checkpoints with an invalid primary purpose cannot be saved by adding a lawful secondary purpose. *State v. McDonald*, 239 N.C. App. 559, 565-66 (2015).

### 1. *Findings of Fact*

Defendant challenges findings of fact 2, 4, 5, and 8 as unsupported by the evidence.

Findings of fact 2 and 4 state:

> 2. That this checkpoint was conducted pursuant to the Belmont Police Department Policy (State's Exh. 1) that was effective August 16, 2018.
>
> . . . .
>
> 4. That while no "Authorization for Checkpoint" form was filled out, Sergeant McRee testified that the Traffic License Check Record (State's Exh. 2) acted as an approval form.

Sergeant McRee testified that he gave preauthorization approval for the checkpoint on 12 May 2023 and that his plan for the checkpoint complied with the written policy of the Belmont Police Department. Although the Part A Authorization form was not completed prior to the checkpoint, Sergeant McRee testified that the Traffic License Record he submitted served as "the authorization form." Thus, the trial court's findings of fact 2 and 4 are supported by competent evidence.

Findings of fact 5 and 8 state:

> 5. That the location at Keener Boulevard and Parkdale Drive was chosen due to speeding complaints on these roads.
>
> . . . .
>
> 8. That a checkpoint in a location with a speeding issue is a way of addressing that concern.

However, the trial court also made the following unchallenged findings of fact:

> 6. That this checkpoint's purpose, as both Sergeant McRee

- 6 -

and Officer Dunlap testified, was to enforce all Chapter 20 violations. This is also evidenced by the Traffic License Check Record (State's Exh. 2).

7. That speeding, which is an issue at the location of the checkpoint, is a grave public concern due to public safety.

. . . .

9. That this checkpoint occurred at 2:00 AM, there were not a lot of cars on the road, and that the time to stop a vehicle and check for identification and registration would have been only ten to fifteen seconds per vehicle, and that therefore there was little interference with individual liberty.

In assessing the challenged findings of fact 5 and 8, in conjunction with the unchallenged findings of fact 6, 7, and 9, it is evident that the trial court's findings are supported by competent evidence. The trial court considered Sergeant McRee's testimony in which he stated he authorized a checkpoint upon officer request and public concerns for speeding. The trial court properly determined, using competent evidence from officer testimony, that the checkpoint was appropriately conducted to enforce all Chapter 20 violations.

### 2. *Conclusions of Law*

Defendant challenges conclusion of law 2:

2. That in conducting the balancing test under *Brown v. Texas*, 443 U.S. 47 (1979) and *State v. Veazy*, 191 N.C. App. 181, the factors weigh in favor of the public interest and that therefore, the checkpoint is reasonable and constitutional.

Here, both officers testified that the primary purpose of the checkpoint was

checking for Chapter 20 violations. Although Sergeant McRee stated that the checkpoint also served a "general crime patrol" purpose, this was in addition to the primary purpose of Chapter 20 violations. In *State v. Cobb*, the court found that a checkpoint's primary purpose of checking for Chapter 20 violations "operated to advance the public concern and was reasonable." 381 N.C. App. 161, 167 (2022) (citation omitted). "[T]he use of time and location limitations in establishing and operating [a] checking station provides evidence that [a] vehicle stop was appropriately tailored." *Id.* (citation omitted). Here, the checkpoint was limited in time and location, ending early due to an increase in dispatch calls. Additionally, the trial court's findings of fact, which are supported by competent evidence, further support conclusion of law 2. *Biber*, 365 N.C. at 167-68. Thus, the trial court properly determined conclusion of law 2.

Defendant also challenges conclusions of law 1 and 4:

> 1. That sufficient supervisory authority for the checkpoint was given.
>
> . . . .
>
> 4. That the checkpoint was proper pursuant to State and Federal Law.

Here, the State provided testimony of Sergeant McRee who stated the checkpoint followed proper preauthorization protocol, as the check record acted as preauthorization under the policy. Sergeant McRee stated that subordinate officers were briefed on the approved checkpoint prior to site arrival, and they were told "to

stop every vehicle unless traffic flow [was] an issue."

Although the Belmont Police written policy states that an officer-in-charge must "fil[e] a request form" Sergeant McRee testified that the Traffic Check Record acted as a preauthorization form and Officer Dunlap corroborated the checkpoint approval in his testimony. The trial court's findings of fact, which are supported by competent evidence, further support the challenged conclusions of law 1 and 4. *Id.* Thus, the trial court properly determined conclusions of law 1 and 4.

Accordingly, the trial court did not err by denying Defendant's motion to suppress.

## III. Conclusion

As the trial court's findings of fact are supported by competent evidence, and the trial court's findings of fact support its conclusions of law, the trial court did not err in denying Defendant's motion to suppress. Accordingly, we affirm the trial court's denial of Defendant's motion to suppress.

AFFIRMED.

Judges ARROWOOD and HAMPSON concur.

Report per Rule 30(e).